O'Brien v. Knotts—165 Ind. 308.

O'BRIEN v. KNOTTS ET AL.

[No. 20,608.   Filed October 11, 1905.]

1. APPEAL AND ERROR.—*Assignment.*—*Waiver.*—A failure to argue an alleged error and to set it out in the brief as one of the errors relied upon for a reversal is a waiver thereof.   p. 311.

2. WILLS.—*Election by Widow.*—*Statutes.*—Under §§2491, 2505 R. S. 1881 a widow was required to make her election to take under the will by an affirmative act, the presumption, in the absence of such affirmative act, being that she desired to take under the law.   p. 311.

3. SAME.—*Election by Widow.*—*Evidence.*—Where the evidence shows that the testator's will was probated in 1872, and his widow continued to reside on the premises until her death in 1902; that she bought and sold personal property, made repairs and valuable improvements; that she cut timber and rendered no account thereof to the children or to the court, there is a failure to show an election by such widow to take under the will.   p. 312.

4. SALES. — *Contracts.* — *Parol.* — *Real Estate.*—*Evidence.*—Evidence showing that a widow exercised absolute dominion over her deceased husband's estate, real and personal; that the estate was indebted $2,000; that no administration was had on the estate and no claims presented to the heirs and no creditors complaining; that the claimant's father, deceased's son, admitted that the widow was by contract to pay the debts and take the estate; that she inherited enough money at the time to pay such debts; that she sold, without objection, the growing timber on such land and that she held undisturbed and undisputed possession for thirty years, warrants a finding that such widow orally purchased such real estate.   p. 313.

5. SAME.—*Contracts.*—*Statute of Frauds.*—*Tenancy in Common.*—A parol contract of sale of real estate by one tenant in common to another is not within the statute of frauds where it is shown that the purchasing tenant took absolute dominion over the whole estate, and that her grantors retired and continued to disclaim any interest therein, and that the purchaser paid the purchase price and made valuable and permanent improvements thereon.   *Johns* v. *Johns*, 67 Ind. 440, distinguished.   p. 314.

6. TENANCY IN COMMON.—*Real Estate.*—*Possession.*—*Sales.*— Where the children orally contract with their mother, that if she will pay their deceased father's debts she may take the whole estate, and she pays such debts, such children retiring

from possession and yielding same to her, and disclaiming orally any interest therein, the possession so taken by the mother is that of the whole property and not that of her former share only. p. 315.

7. EVIDENCE.—*Motion to Strike Out.—Indefinite.*—A motion to strike out all of a witness's testimony relating to a certain fact is too indefinite, and there is no error in overruling same. p. 315.

8. SAME.—*Motion to Strike Out.—Facts Developed on Cross-Examination.*—A motion to strike out certain evidence, a part of which was developed by appellant on cross-examination, can not be sustained. p. 316.

9. SAME.—*Declarations Against Interest.—Hearsay.*—In an action for possession of lands devised, wherein defendants claimed that the devisee had sold such lands by parol to their grantor in consideration of such grantor's payment of testator's debts, the declarations of the deceased devisee are admissible to show that there were debts against the devised lands. p. 316.

From Tipton Circuit Court; *James F. Elliott,* Judge.

Suit by Flora O'Brien against Eliza C. Knotts and another. From a decree for defendants, plaintiff appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Affirmed.*

*Greenlee & Call* and *Coleman & Carter,* for appellant.

*Gifford & Gifford* and *Beauchamp, Mount & Proctor,* for appellees.

HADLEY, J.—This is a suit for partition, but the fundamental question involved is one of title in the appellant. On a general denial of the complaint, there was a trial by the court, and finding and judgment for appellees.

The special findings disclose the following facts: Jonathan Jennings departed this life testate in 1872, leaving Margaret Jennings, his widow, and three children, namely, John T., Samuel, and the defendant (appellee) Eliza C. Knotts, *nee* Jennings, as his only heirs at law. The testator at his death was the owner of eighty acres of land in Tipton county, and a small amount of personal property, all of which he devised and bequeathed to his wife for life, with remainder in equal shares to his three children. The son

Samuel died in 1883, leaving neither wife nor child. The son John T. in 1880 intermarried with the plaintiff (appellant), and in 1883 died, leaving no heirs but his wife and mother, Margaret Jennings. Appellant subsequently intermarried with O'Brien. Margaret Jennings died in 1902, leaving as her only heirs her daughter Eliza C. Knotts, and Porter Nelson, with whom she had intermarried in 1888. At the death of the testator he was indebted in about the sum of $2,000. The will was duly probated, but no letters were ever issued thereon and no administration had thereunder. The widow, Margaret, was named as executrix, but she never qualified. Said widow elected to take her rights in the estate under the law, and not under the will. When the widow and her said children discovered that it would require all of said estate beyond the legal portion of the widow to pay the debts against the same, the children, said John T., Samuel, and Eliza C. Knotts, entered into a parol contract with their mother, said Margaret, whereby the latter assumed and agreed to pay all of the indebtedness of the estate with her own separate means, and in consideration therefor each of said children agreed to execute to said widow a deed, conveying to her all the right, title and interest possessed in said estate. Under and in pursuance of the contract all of said children put their said mother in full, complete and absolute possession of the land described in the complaint, and did then and forever after renounce any right or claim therein. The widow on her part paid, of her separate property, all the debts against said estate, amounting to about $2,000, made lasting and valuable improvements at a cost and value of $1,200, and held the absolute and undisturbed possession of the land in controversy until her death.

Upon the foregoing facts the court concluded that the law was with the defendants, and, having overruled appellant's motion for a new trial, rendered judgment against her for costs, and she appeals.

Besides the overruling of her motion for a new trial, appellant assigns the court's conclusion of law as erroneous, but in her brief does not state the latter as a ground relied upon for reversal, nor refer to it in argument as being a misstatement of the law upon the facts set forth in the special findings. Under the waiver or implied concession, therefore, we are not called upon to consider the accuracy of the conclusion of law.

The principal question in the case is the sufficiency of the evidence to sustain the special findings: It is earnestly and ably contended by counsel that there was an absolute failure of legitimate evidence to sustain the findings (a) that the widow, Margaret Jennings, elected to take her interest in the estate of her deceased husband under the law; (b) the making of the parol contract of sale; and (c) that possession by the widow was taken under the contract.

(a)   Under the law as it stood in 1872, 1 R. S. 1852, p. 248, §§27, 41, §§2491, 2505 R. S. 1881, when the will was probated, a widow who was called upon to elect between a testamentary provision and her statutory rights in her deceased husband's estate, as in this case, was required to signify her choice by some open avowal or affirmative act under the will only when her aim was to accept the provisions of the will. The rule was grounded upon the theory that as the statute defined and fixed the rights of the wife in her husband's estate, she could not be divested of what the law gave her for another and different interest without her consent. So it was held, under the statute as then constructed and remained till 1885 (Acts 1885, p. 239, §2666 Burns 1901), that in the absence of some writing or declaration or affirmative act pursuant to the provisions of the will, indicating an acceptance of the will, the widow was presumed to have taken her rights under the law. In other words, in all cases of controversy there must be produced some positive, affirmative and clear evidence that the widow had consented to surrender her legal

rights in the estate, for the testamentary provision, or she would be adjudged as having elected to abide her rights under the statute. *Wetherill* v. *Harris* (1879), 67 . Ind. 452, 473; *Leach* v. *Prebster* (1872), 39 Ind. 492, 497; *Piercy* v. *Piercy* (1862), 19 Ind. 467; *Wilson* v. *Moore* (1882), 86 Ind. 244; *Wilson* v. *Wilson* (1896), 145 Ind. 659, 666.

Under this rule of the law we are unable to say that the evidence was insufficient to justify the court in finding that the widow took under the law. There is no evidence 3.   that she ever uttered a word or did an act that indicated that she had accepted the provisions of the will. It is true that she was nominated as executrix, and that the will was probated, but there is no evidence that she procured or knew of the probate, or that she had any knowledge of her nomination, or even of the contents of the will. The evidence all shows that there was no regular settlement of the estate, either under letters testamentary, or of administration, and that no such letters were ever issued. Besides, it appears, without contradiction, that after the death of her husband she and her children continued to reside on the farm. She assumed and continued to exercise absolute dominion over the property, real and personal, bought and sold personal property, made repairs, ditched, fenced and cleared up ground, and made valuable and lasting improvements, disposed of growing timber, and rendered no account to her children or the court. But appellant argues that her possession and control was consistent and consonant with the provisions of the will, which gave her a life estate in all the property. Except the sale of the timber from the farm, this was perhaps true; but it was consistent in a broader sense with her claim of absolute ownership by purchase from her children. As we have seen, the widow could not be divested of her statutory rights without clear and satisfactory proof that, with knowledge of the provisions of the will, she voluntarily accepted the testamentary pro-

vision in lieu of the benefits provided by statute. Clearly, under the evidence and the rule of law prevailing at the time, we can not disturb the court's finding that the widow took under the law.

(b) The second finding objected to, to wit, the existence of a parol contract of sale between the mother and children, is not so clearly established. An apparently credible witness testified to hearing a conversation between John T. Jennings, former husband of appellant, and James Knotts, the husband of his sister Eliza, said John and Eliza being children of said widow, in September, 1878, when Knotts and his wife were about leaving for Kansas to reside, in which conversation Jennings said to his brother-in-law Knotts: "Jim, we ought to have made those quit-claim deeds to mother for the farm," and Knotts replied that he (Jennings) should make out the deeds and send them to him, and he and his wife would sign them. Another witness testified that while living on the farm, about 1877, he constructed some tile ditches, and did some grubbing and other work on the place for the widow, and in the same period was told by John T. Jennings, while speaking of the farm and his mother's possible removal to Kansas, that she had the right to sell the farm; that the children had agreed to turn it over to her if she would settle the debts; that his mother wanted it in better repair and would have more done, but she had already paid out more money than the place was worth. Numerous other statements of John T. Jennings, who was the oldest child, were admitted, to the effect that he had no interest in the land, that the farm was his mother's and that she had paid out about $2,000, to save it. It was further in evidence that the widow, in 1873, the year following her husband's death, received from her father's estate about $2,000. Besides, it will be noted that appellant introduced no evidence whatever in contradiction of appellees' claim of a parol sale to the mother. So we have it shown by uncontradicted evidence that the widow;

after the death of the husband, exercised absolute control and dominion over all the property of the estate, real and personal. The estate was indebted about $2,000. There was no administration; no claims presented to the heirs; no creditor complaining in court, or elsewhere. The statements of John T. Jennings that his mother, by contract with her children, was to pay the debts and have the farm, and that she was not settling the estate under the will; the inheritance of the widow from her father's estate of enough money to pay the debts; the sale of growing timber; the making of permanent improvements of the value of $1,200 by the widow, and her undisturbed possession for thirty years; and the natural inference that may be drawn from these several incidents—we think warranted the court, in the absence of anything to the contrary, in finding that there was a contract of sale made in substance as stated in the finding.

It is earnestly contended that the contract relied on, being oral, if made at all, was within the statute of frauds, and was not saved therefrom by the purchaser's subsequent possession, performance and improvements. 5. We are aware of the general doctrine which asserts that the possession of one tenant in common is the possession of all, and of the cases to which *Johns* v. *Johns* (1879), 67 Ind. 440, belongs, which hold that a mere continuance in possession of a tenant in common or other person is not such a taking of possession under an oral contract as will rescue the case from the statute of frauds. But this case is distinguishable from the cases referred to, in that its facts go further than sanctioned by the general rule above referred to. Here it is shown that Mrs. Jennings, under the contract which it is claimed she made with her children, took, not the constructive, but the actual, absolute possession of every part and interest in said estate, and continued undisturbed in the same, and that her grantors retired and continued to disclaim, especially the one under whom the

appellant claims, any right or interest in the land. The character of the possession taken as here shown—the full payment of the purchase price, and the making of valuable and lasting improvements—brings the case within the doctrine of *Peck* v. *Williams* (1888), 113 Ind. 256, where it is said: "A contract of purchase thus made and carried into effect by possession and improvements made is taken out of the statute of frauds, and the state of the title and the possession of the purchaser are sufficient to put such a purchaser on inquiry."

(c) Before the alleged sale of the land to their mother, the latter and her children continued to live together on the farm, all enjoying actual and equal possession of the common property. After the alleged sale, John T. married appellant, left the farm, and settled three miles away, his sister Eliza married and moved to the state of Kansas, and Samuel Jennings died. In addition to thus abandoning the farm to their mother, there is not a shadow of· evidence that any one of the children ever thereafter claimed an interest in the land, or denied their mother's ownership, or did anything inconsistent with the sale. These things reasonably show that after the time of the sale, as claimed, there was at least a different and enlarged possession conferred upon the widow; that thereafter she held, not her undivided one-third part, but the absolute and exclusive possession of the whole estate. Here there is at least some legitimate evidence, both direct and inferential, which is of a character to forbid us from holding that the court erred in its third finding. We can not weigh the evidence.

In the progress of the trial, Mrs. Shepley, sister of Margaret Jennings, the widow, as a witness for appellees, testified that in 1872 and 1873 she (witness) and her sister, Margaret Jennings, each inherited from their father, a resident of Fayette county, Indiana, about $2,000, as follows: $200 in personal property, $200 from rents, $1,400 from the sale of real estate received in parti-

tion, which she and her sister conveyed to Beeson in February, 1873, and $200 interest accrued on purchase-money notes. On cross-examination the witness said that she did not see any money paid to her sister, but her sister told her that she received it, and she knew that she and her sister had the same interest, and sold to the same man, and that she (witness) received $1,400 principal for her share in the land, and her sister got the same. And the cross-examination proceeded: "Did she tell you that she got the money? A. Yes, sir." Appellant's counsel moved that the court "strike out all the testimony of the witness in relation to the fact that her sister received any amount of money." The motion was properly overruled, for at least two reasons: (1) Because it was too general. Such a motion, to be entertained, should point out to the court with reasonable certainty the particular matter, or answer, or part of answer to which it is addressed. The trial judge should not have been expected to hunt through the long examination and sift out all expressions of the witness that related to the fact that the witness's sister received the money. *Wysor Land Co.* v. *Jones* (1900), 24 Ind. App. 451; Underhill, Evidence, §368; 2 Elliott, Evidence, §§832, 884; 3 Jones, Evidence, §898.

(2) The motion embraced some matter brought out by responsive answers to questions propounded by appellant's counsel, as indicated above. Appellant, having 8. quizzed the witness in the hope of receiving favorable testimony, will not be heard on a motion to strike it out when it turned out to be unfavorable. *Ellinger* v. *Rawlings* (1895), 12 Ind. App. 336; 3 Jones, Evidence, §898; Underhill, Evidence, §368.

In appellees' direct examination of B. F. Hines, the witness had spoken of an old friendship between him and John T. Jennings, when they were young men, and of a 9. conversation between them in that period concerning the estate and his relations thereto; and then counsel

Aetna Life Ins. Co. *v.* Fitzgerald—165 Ind. 317.

addressed to him the following question: "What did he say at that time about any indebtedness against that place ?" Appellant objected to the question on the ground that it called for hearsay. The objection was overruled. We think the evi-dence is not objectionable as hearsay. John T. Jennings, with others, was a devisee of the land subject to the payment of debts. In a proceeding to sell the land to pay the debts of the estate, his admissions and declarations, against interest, concerning the existence of such debts would be competent evidence against him. Appellant, his wife and heir, has no greater rights concerning the same subject-matter, and is bound in the same way her husband would be bound if living. Furthermore, if John T. Jennings were now in court denying the contract of sale and the payment by his mother of the debts of the estate, evidence of his admissions would be unquestionably competent. Appellant, claiming only by inheritance from him, is governed by the same rights and limitations.

We find no error. Judgment affirmed.