INDIANA SERVICE CORPORATION ET AL. *v.* TOWN OF FLORA

[No. 27,446.   Filed March 3, 1941.]

*Barrett, Barrett & McNagny, Leigh L. Hunt, Mentor Kraus* and *J. A. Bruggeman,* all of Fort Wayne; *Cartwright, Wason & Ives,* of Delphi, and *Lawyer, Anderson & Livingston,* of Hammond, for appellants.

*Roscoe Hollingsworth* and *Ben M. Scifres,* both of Lebanon, and *A. D. Bishop,* of Flora, for appellee.

SHAKE, J.—The appellee, as plaintiff below, brought this action under the eminent domain statute (§ 3-1701, Burns' 1933, § 14061, Baldwin's 1934) for the condem-

nation of certain designated electric utility property owned and operated by the appellant Indiana Service Corporation and located in the town of Flora and within six miles thereof. The other appellants are trustees under mortgages on said property. The trial court found, over the appellants' written objections, that the appellee was entitled to appropriate the property described in its complaint, and entered an order appointing appraisers to assess the damages. The appeal is from this order.

There is pending a motion to dismiss, consideration of which was postponed until final determination on the merits. The basis of the motion is that the ▮ appeal is from an interlocutory order and that the appellants' brief was not filed within 10 days after submission, as required by Rule 16 of this court adopted June 21, 1937. There is no dispute as to the facts.

The statute under which the appeal was taken provides that "from such *interlocutory order* overruling such objections and appointing appraisers, such defendants, or any of them, may appeal to the Supreme . . . Court from such decision as and *in the manner that appeals are taken from final judgments in civil actions. . . .*" (Our italics.) It is further provided that an appeal bond shall be filed within 10 days after the appointment of appraisers and that the transcript shall be filed in the office of the clerk of this court within 30 days after the filing of the bond. § 3-1705, Burns' 1933, § 14065, Baldwin's 1934. Conflicting language appears in the same sentence of the statute. If this is an appeal from an "interlocutory order," the appellants' brief was not filed in time; but if it is to be treated "in the manner that appeals are taken from final judgments in civil actions," the motion to dismiss should be overruled.

The appellee is in error in assuming that, under § 2-3218, Burns' 1933, § 490, Baldwin's 1934, an appeal may be taken from any interlocutory order. That statute specifically enumerates what interlocutory orders are within its terms, and orders appointing appraisers in condemnation proceedings are not so embraced. Many interlocutory orders may be entered that do not come within the above statute, and as to these there may be no review until after the rendition of the final judgment, unless there is some other statute authorizing such review. While the law looks with favor upon the right of litigants to have their cases reviewed, one who seeks to take advantage of a method of appeal that is special in character and in derogation of the general regulations relating to that subject must bring himself clearly within the procedure which he undertakes to invoke. An appeal from an order overruling a defendant's objections in an eminent domain proceeding is specifically authorized, but, except as to the time when the bond and transcript shall be filed, the procedure is under the general statutes and rules relating to appeals, and not under those pertaining to interlocutory orders. The motion to dismiss is therefore overruled.

The substantial question properly presented by this appeal is the propriety of the trial court's order overruling the appellants' several objections. Such objections may serve the purposes of demurrers or answers, or both, but in this case the evidence was stipulated and the facts are not in dispute. It appears from the record that, presuming to act under § 54-612, Burns' 1933, § 14029, Baldwin's 1934, the board of trustees of the town of Flora adopted a declaratory resolution to "acquire by purchase and/or condemnation and operate the public utility local property located in and serving said Town and within six

miles of the corporate limits thereof, used and useful in furnishing electric utility service to said Town and to the consumers therein and within said adjacent territory, which said electric utility property is now owned by Indiana Service Corporation. . . ." A special election was held to determine whether the town should acquire said property, which resulted in a majority of the votes cast approving its purchase or condemnation. Negotiations for such purchase having failed, the appellee brought this action under the eminent domain statute. The appellee described the property to be acquired in its complaint, but specifically excepted "the power system step down substation located on Lot # 65 in A. Flora Addition to the Town of Flora at the northeast corner of said Town, including said lot, with fencing and said substation equipment, structure, foundations and miscellaneous accessory equipment." We are called upon to determine the effect of the omission of the substation from the description of the property to be acquired as set out in the complaint for condemnation, after it had been included in the terms of the declaratory resolution and the resolution for the special election.

The stipulations of the parties disclose that the property used and useful in supplying electricity to the town of Flora and the territory adjacent thereto consists of a transmission line, a substation, and a distribution system. Current of 34,500 voltage is brought into the substation over the transmission line, where the voltage is reduced to 2,400 for distribution to the consumers. It cannot be doubted, therefore, that the substation with its equipment is an integral part of the utility property.

The statute authorizing municipalities to acquire utility property by purchase or condemnation provides, among other things, that:

"In the event such municipal council and the owners of such utility are unable to agree upon a price to be paid by such municipality for such utility, such municipality shall by ordinance, if it is so determined, declare that a public necessity exists for the condemnation of the property of such utility which such municipality has determined to acquire." § 54-612 (b), Burns' 1933, § 14029 (b), Baldwin's 1934.

The eminent domain act contains the following provision:

"Before proceeding to condemn, such person, corporation or other body may enter upon any land for the purpose of examining and surveying the property sought to be appropriated or right sought to be acquired; and shall make an effort to purchase for the use intended such lands, right of way easement or other interest therein or other property or right." § 3-1701, Burns' 1933, § 14061, Baldwin's 1934.

An effort to purchase the property sought to be acquired is a condition precedent to the right to maintain an action to condemn. *Slider* v. *Indianapolis, etc., Traction Co.* (1908), 42 Ind. App. 304, 85 N. E. 372, 85 N. E. 721. There can be no compliance with this requirement unless the subject of negotiation is clear to both parties, since a meeting of the minds is essential to the existence of a valid contract. If a municipality makes an offer to acquire a particular property, or a specific part thereof, which offer is rejected by the owner of the utility, and if the municipality then undertakes to condemn other or different property than that which it has offered to purchase, it cannot be said that an effort was made to purchase that which it is sought.

to condemn. This principle was enunciated in *Central Railroad Co.* v. *Hudson Terminal Railway Co.* (1884), 46 N. J. L. 289, 293, which case involved an attempted condemnation of real estate for railroad purposes. Prior to filing its complaint, the petitioner made an offer to purchase certain land. It afterwards developed that a part of that tract was not subject to condemnation. The petitioner contended that since its offer included the part sought to be condemned, it was entitled to take that particular parcel. In denying this contention, the court said:

> "Again, it is plain that the right to condemn, delegated by this statute, implies the power to purchase, for according to the twelfth section, an effort to purchase by agreement must precede the exercise of the power of condemnation. . . .
> ". . . Before applying to the justice for commissioners, the company must have been unable to agree with the owner for the purchase of the land required. The petition avers that the company could not agree with the owners as to the price of all the lands demanded; but it by no means follows that a bargain could not have been made for the sale of the hundred-feet strip. The owners are entitled to have an opportunity for such a contract presented before their land can be taken by condemnation. Hence, the entire proceeding is illegal."

So in the case at bar, the town of Flora negotiated for the purchase of the public utility property located in and serving said town and within six miles of the corporate limits thereof, used and useful in furnishing electric service to said town and to the consumers therein and within said adjacent territory. But when these negotiations failed, the town undertook to condemn said property, except the power system step down substation, which, as we have already pointed out, was an integral part of the system. In view of these undisputed facts, it cannot be said that the town ever made

an effort to purchase the property now sought to be condemned. It is conceivable that if the offer to purchase had related to the property which is the subject of the condemnation proceeding, the offer might have been accepted, in which event this litigation would not have been necessary.

The appellee has cited cases to the effect that a municipality is excused from making an offer to purchase when it affirmatively appears that negotiations would be futile, and calls our attention to the fact that when it offered to acquire the whole of this utility property, the owning company declined to negotiate for its sale. The cases referred to are sound, but they do not apply to the factual situation with which we are here dealing. Had the owner indicated that it would not sell the whole of its property, or any part thereof, the rule might apply.

The judgment is reversed, with directions to vacate the order appointing appraisers and to sustain the appellants' objections.

NOTE.—Reported in 31 N. E. (2d) 1015.