NORTHERN INDIANA PUBLIC SERVICE CO. *v.*
DARLING ET AL.

[No. 29,672. Filed December 22, 1958. Rehearing denied
February 19, 1959.]

238

*Lawyer, Friedrich, Petrie & Tweedle,* of Hammond and *George D. Hershman,* of Crown Point, for appellant.

*Frederick C. Crumpacker,* of Valparaiso, for appellees.

EMMERT, J.—This is an appeal from a judgment for $7,000 plus interest, entered on a verdict for appellees on their exceptions to the report of appraisers in an eminent domain proceeding. The appraisers awarded appellees $800 for an easement for a high pressure gas pipeline, plus $1,200 as damages to the residence of the land owned by the Darlings. The Millers were mortgagees. The error assigned is overruling appellant's motion for a new trial, which charged 27 separate causes of alleged errors.

The Darlings owned 72.46 acres of land about 2½ miles southeast of Hobart in Lake County. Approximately 40 acres lie north of Haven Hill Road, and the easement, which is 49.5 feet wide, runs through this tract from the northwest to the southeast for a distance of 1788.6 feet. The remaining 32.46 acres of the tract lie south of the Haven Hill Road. The Darlings bought the tract in July or August of 1954 for $40,000.

It was assumed at the time of trial that the taking of the easement was on August 31, 1955. On October 14, 1955, appellant paid to the clerk the amount of the award of $2,000. The trial was begun on January 9, 1956, and the verdict returned three days later. By

the latter time, a 16 inch high pressure gas line had been laid approximately 30 inches deep, but not all the grading was completed. There was room to run another gas line south of the one installed, and the complaint stated the intended use was for gas mains or lines. Pursuant to §2-2014, Burns' 1946 Replacement, the Jury, before verdict, visited the lands involved.

On the tract was located a two-story horse barn, 40 by 85 feet, which was not more than 150 feet west of the pipeline; a seven-room modern dwelling, not more than 250 feet from the pipeline. There was also a two-car garage, a chicken house 25 by 150 feet, and a hog house about 30 by 40 feet in size.

An engineer for the appellant testified in substance that the walls of this 16 inch line were 5/16 of an inch thick, and that the manufacturer tested each length with 1400 pounds air pressure; that the appellant would likely operate it at 160 pounds, but later it might go up to 600 pounds; and that appellant planned testing it for 750 pounds water pressure, which could not be done in the winter time. He further testified that some lines of appellant were inspected once a month, others might be once every six months; that the operating department of appellant would walk it more often in the winter; that a leak would be more visible on the snow than in vegetation, and that there is a possibility of leaks in a gas line like this; when a leak is found it is repaired; that when there is a leak there is a chance of fire; that he did not know of any actual explosions "in gas lines."

Mr. C. E. Wade, a licensed real estate broker of Haven Hill Road testified that the year before there had been an explosion in connection with the Michigan Wisconsin pipeline near Chesterton, in which five men had been killed; that based on his experience as a broker

dealing with easements for pipelines conveying natural gas, there was a possibility of fire or explosions of the gas, which had a depreciating effect upon the market value of the Darling property. Two other witnesses for the appellees testified as to the adverse effect of a gas line on the value of the real estate.

"Courts take judicial knowledge of the fact that natural gas is a highly inflammable and explosive substance. *Indiana Natural Gas and Oil Co.* v. *Jones et al.* ▆▆ (1895), 14 Ind. App. 55, 42 N. E. 487; *Jamieson* v. *The Indiana Natural Gas and Oil Company et al.* (1891), 128 Ind. 555, 28 N. E. 76, (12 L. R. A. 652) ; *The Mississinewa Mining Co.* v. *Patton* (1891), 129 Ind. 472, 23 N. E. 1113." *Public Service Co. of Ind.* v. *Dalbey* (1949), 119 Ind. App. 405, 415, 85 N. E. 2d 368. We also take judicial notice that when the ground is frozen, a leak from a gas main may go underground for many feet and finally escape into buildings where it may cause fires and explosions. The jury had the right to infer that the possible danger from fire or explosions, even though it might not happen on the Darling property, did lessen the market value of the residue of the real estate. Therefore, there was no error in giving appellees' requested instruction No. 5, which is set forth in the note.[1]

---

1. "In cases of this kind it is presumed that the company will put in and maintain a pipeline or pipelines, in a reasonably prudent and careful manner, but natural gas is a highly inflammable substance, and liable to explode. All damages to which defendants are legally entitled *for the taking of the easement* must be recovered in proceedings of this character in one action, for successive actions cannot be maintained. So in this case, in considering the damages to be assessed, you may take into consideration, insofar as such facts may be shown by the evidence, the probability of injuries from fire or explosions, which may result from the ordinary prudent and careful operation of the pipeline in the future, *only* to the extent that such probability of fire or explosions may effect a depreciation or deterioration of the value of defendants' real estate, as of August 31, 1955." Appellees' requested instruction No. 5.

Nor was there any error in permitting various witnesses to testify that the possibility of fire and explosions, as well as the location of the line, had an adverse effect on the market value of the property.

Appellant asserts it was error for the court to refuse to give its requested instructions numbered 6, 7, 9, and 14. If the subject matter was adequately covered by other instructions given by the court, there was no error in refusing each. "This necessarily requires examination of all instructions given. They are not all in the brief. Therefore we cannot consider the questioin as to whether the court committed reversible error in refusing . . ." the instructions tendered by appellant. *Wilson* v. *State* (1953), 232 Ind. 365, 368, 369, 111 N. E. 2d 709.

"The great weight of authority holds that evidence of the price paid, by way of a voluntary sale and purchase near the time the lands were appropriated, for other lands similarly situated in the immediate neighborhood, is competent on the question of the value of the lands taken." [Citing cases and authorities.] *Illinois Central R. Co.* v. *Howard* (1925), 196 Ind. 323, 325, 326, 147 N. E. 142. "If the land taken has a higher market value by reason of a use or uses for which it may be adapted, but to which it has not been put, the owner of the land is entitled to the market value, as so enhanced. If a tract of land adjacent to a populous and growing city has always been used for farming purposes, but is clearly available for residential purpose, the fact that it had never been put to this purpose but had been used as farm land would not prevent a value being placed upon it for residential purposes, and the owner would be entitled to the market value as enhanced for this purpose, if

so enhanced." *State* v. *Hamer* (1936), 211 Ind. 570, 578, 199 N. E. 589. Under these authorities the Darlings were entitled to show that the land was adapted to use as residential real estate, and that other real estate in the neighborhood had been so developed for subdivision purposes for residence property, and what the voluntary sale prices had been for other residential property in the nearby area westward toward Hobart. Appellant's objection went more to the weight to be given to this evidence than to its admissibility.

Nor has the appellant cited us any Indiana authorities, including statutes under Rule 2-17(e);[2] which make the admissions of the plats and maps of other subdivisons in the area error even though not appearing of record in the official records of Lake County.[3] The photographs of other homes in the

2. ". . . and setting out in substance the relevant parts of such statutes as are deemed to have an important bearing." Rule 2-17(e). Rule in effect when appellant's brief filed (which has been amended Oct. 15, 1957).

3. "It was not contended that the land was platted, or that the appellee was entitled to recover for it as platted land, but it was contended that one element of value that the tract of land had was its location in close proximity to a large and growing city, and its susceptibility to be platted and used as residence property made it more valuable than it otherwise would be.

"We think the admission of the plat in evidence was clearly proper. In the case of *Boom Co.* v. *Patterson,* 98 U. S. 403, the court says: 'So many and varied are the circumstances to be taken into account in determining the value of property condemned for public purposes, that it is perhaps impossible to formulate a rule to govern its *appraisement* in all cases. Exceptional circumstances will modify the most carefully guarded rule; but, as a general rule, we should say that the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future.'

"This rule clearly authorizes the jury to take into consideration the value of the land to be platted as an addition to the city of Evansville now or in the immediate future, and it was proper for the appellee to show its adaptability for that purpose, and this could be more clearly demonstrated by the use of a map or plat made from actual measurements than by the mere parol statements of witnesses." *Ohio Valley Railway and Terminal Company* v. *Kerth* (1892), 130 Ind. 314, 317, 30 N. E. 298.

neighborhood, the voluntary prices paid for the lots on which they were located, and the general character of the land of the area, as well as the tract owned by the Darlings were each admissible, and the trial court committed no error in its rulings on these items of evidence.

There was another pipeline for the transmission of oil about 25 to 30 feet away from the Darling property, which was owned by the Naph-Sol Refining Company, which company did not have the power of eminent domain. Appellant asserts it was error to admit into evidence the purchase price for a part of this easement paid by Naph-Sol, citing *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Smith* (1912), 177 Ind. 524, 551, 552, 97 N. E. 164.[4] However, when we examine the motion for a new trial we find it fails to set out any proper objection upon which it may now predicate error. It is not necessary to decide whether or not other sales of a right-of-way for pipeline purposes to a purchaser which did not have the power of eminent domain would be admissible over proper objection.

We find no merit in appellant's contention that the verdict was not sustained by sufficient evidence or was

---

4. In this case the court assumed that the prices paid for other easements were paid by the railway company which had the power of eminent domain, and said, "It is evident that the court, parties and witness understood that the 'strips' in question referred to parcels of land purchased by appellant from persons in that vicinity for its additional right of way. It was error to overrule the objection. As the price paid for such strips included not only the value of the land purchased, but the damages to the remainder of the tracts, the evidence would involve the determination of collateral issues. Evidence of this character is not admissible anyway, because purchases of land for a right of way are usually in the nature of a compromise, and afford no fair criterion of value." [Citing cases.] *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Smith* (1912), 177 Ind. 524, 551, 552, 97 N. E. 164.

contrary to law. The amount of recovery was well within the evidence as to the amount of damages sustained by the Darlings for the easement for the uses and purposes taken. It is not the function of this court to weigh the evidence on appeal.

Many of the objections made were too indefinite to constitute reversible error when overruled. We have carefully examined the motion for new trial, and the argument section of appellant's original brief, and we find no cause for reversal.

Judgment affirmed.

Landis, C. J., Achor, Arterburn and Bobbitt, JJ., concur.

NOTE.—Reported in 154 N. E. 2d 881.