SOUTHERN INDIANA GAS & ELECTRIC CO. *v.*
GERHARDT ET AL.

[No. 29,921. Filed January 30, 1961. Rehearing denied
March 7, 1961.]

390

*Bamberger, Foreman, Oswald & Hahn, William P. Foreman,* of Evansville, and *John A. Posey,* of Rockport, for appellant.

*Paul F. Mason,* of Rockport, *Ford G. Lacey,* of Boonville, and *William L. Mitchell,* of Evansville, for appellees.

ARTERBURN, J.—This is an action brought by the appellant, Southern Indiana Gas and Electric Company against the appellees, John A. Gerhardt and Edith Gerhardt (and others not involved in this appeal), for the purpose of acquiring by eminent domain an easement for electric transmission lines across certain lands of the appellees situated in Warrick County.

The cause was tried by jury upon issues formed by exceptions filed by both parties to the appraiser's report. The jury returned a verdict for the appellees, awarding damages in the amount of $14,000.

The appellant assigns as error on appeal the overruling of its motion for a new trial. The motion contained 32 separate specifications, 16 of which are treated by the appellant in its brief, and the remaining specifications are thereby waived.

We take up first those specifications relating to motions made by the appellant to strike the testimony of witnesses as to valuation and damages of the property in question because the opinions were based upon alleged improper elements and erroneous assumptions of fact.

The record reveals that the appellees offered as witnesses on the subject of valuation and damages of the property involved, the testimony of Carl Wagner, Albert Woll, Damon Lloyd, James C. Bauer, John A. Gerhardt and Virgil Gerhardt, among other witnesses. The named witnesses were subjected to an intensive and long, drawn-out cross-examination by the counsel

for appellant in determining the basis upon which their opinion was formed.

Carl Wagner, on cross-examination, was asked what elements he considered in determining the damage. He stated that he considered poles and lines to be strung across the easement as a danger and an inconvenience in farming operations on the land involved; that the poles and lines would hinder spraying with an airplane for infestation in a field; that it would be dangerous to pull a grain elevator without lowering it down a driveway under the high-tension lines, and that there would likely be tile breakage in the use of the easement by the appellant from time to time, which would cause interference with drainage from other parts of the land. He also testified that the towers and poles to be erected would cause difficulty in farming because the rows would be broken and heavy machines would have to be taken around the poles.

The appellant insists that such testimony was an improper consideration of an "assumed danger" and that "consideration of speculative matter such as the possibility of driving farm equipment into appellant's towers" was not proper.

The jury, in determining the damages, must find what the "fair market value" of the property was at the time of the taking. Burns' §3-1706. The "fair market value" is a determination of what the land may be sold for on the date of the taking if the owner were willing to sell. Anything affecting the sale value at that time is a proper matter for the jury's consideration in attempting to arrive at a "fair market value."

A distinction should be drawn between the right to show what effect apparent dangers such as falling

transmission lines or fire from passing locomotives and similar risks have upon the fair market value of property, and the right to show the possibility of such injuries which may occur in the future as a basis for present damages. In the latter case such evidence as to direct damages is not competent, while in the former situation the evidence may be shown as a basis or factor taken into consideration in estimating the fair market value. In other words, evidence of those dangers which will affect a prospective purchaser and as a result affect the market value, is competent evidence. *Chicago, etc., R. Co.* v. *Ader* (1915), 184 Ind. 235, 110 N. E. 67; 29 C. J. S., Eminent Domain, §170, 171; 18 Am. Jur., Eminent Domain, §267.

The cross-examination in this instance was direct as to what factors were considered in fixing the fair market value. Whether or not property has dangerous or annoying factors connected with its use or occupancy which would affect its salability and desirability is a question for the jury under its fact-finding function. The jury is not bound to accept such opinions. *Heath* v. *Sheetz* (1905), 164 Ind. 665, 74 N. E. 505.

In the cases of *Southern Indiana Gas and Electric Co.* v. *Jones* (1960), 240 Ind. 434, 166 N. E. 2d 127 and *Northern Ind. Pub. Serv. Co.* v. *Darling et al.* (1958), 239 Ind. 237, 154 N. E. 2d 881, we held that matters of danger and annoyance which have a tendency to affect the sales value of the property are elements which a jury may consider, if it sees fit, in attempting to reach a figure for the fair market value of the property. In the *Darling Case* we decided specifically that the dangers of explosion in connection with a gas pipe line through certain property could be considered in determining its fair market value and

salability in a condemnation action. It likewise follows that inconveniences and what appear to be dangers that would influence a purchase of property are factors which may properly be presented to a jury for its consideration in cases of this character. It is common knowledge, for example, that power lines and high-tension power lines sometimes break and fall during heavy storms and ice; that there is sometimes television and radio interference caused by the proximity of such high-tension lines.[1] If such possibilities exist, certainly a jury may consider whether or not the salability of such property and its fair market value may be hurt by such factors.

In *Northern Ind. Pub. Serv. Co.* v. *Darling et al.* (1958), 239 Ind. 237, 154 N. E. 2d 881, 883, we said:

> ". . . The jury had the right to infer that the possible danger from fire or explosions, even though it might not happen on the Darling property, did lessen the market value of the residue of the real estate. Therefore, there was no error in giving appellees' requested instruction No. 5, which is set forth in the note."

Anything that would interfere with the farming operations on the land used for agricultural purposes may also be considered by a jury.

In *Southern Indiana Gas and Electric Co.* v. *Jones* (1960), 240 Ind. 434, 166 N. E. 2d 127, 130, we said:

> "Appellant has also contended said instruction No. 3 is erroneous for telling the jury they could consider as an element of damage things that are annoying or hurtful, which appellant contends are

---

1. "On the other hand, it has been held that the danger to persons or live-stock from falling wires may be shown as tending to depreciate the market value of the property." 18 Am. Jur., Eminent Domain, 267, p. 909; *Telluride Power Co.* v. *Bruneau*, 41 Utah 4, 125 Pac. 399; Ann. Cas. 1915A, 1251; See Annotation, 49 A. L. R. 701.

speculative or conjectural matters. It will be noted the instruction limited the consideration of things annoying or hurtful to such as were necessarily incident to the permanent location and operation of appellant's power lines across appellees' premises. We are of the opinion that said instruction when read in its entirety related to proper matters affecting the market value of appellees' land and that it is not objectionable for the reasons urged by appellant."

In another case it has been said:

"The cutting of fields into inconvenient shapes, the interruption of convenient ways for animals to pass from the farm buildings to and from pasture and the necessity for additional fencing, are elements of damage, and may be properly inquired into, in a case like this. (Cases cited.) The increased hazard from fire being set by passing locomotives is also a proper consideration for the jury in estimating the damage. (Cases cited.)" *New Jersey, etc., R. Co.* v. *Tutt* (1907), 168 Ind. 205, 218, 80 N. E. 420.

It is argued that persons performing the farming operations should not "forget" to lower an elevator as it goes under the high-tension lines in order to avoid contact with them; that the effect thus is to hold the appellant Electric Company liable for possible negligence of those using the land. The issue here is not a liability for negligence, but rather what effect does such inconvenience and possibility of injury, even from negligence, *have upon the salability and the fair market value of the land.* The jury has a right to take such factors into consideration for what they are worth as affecting the value of the land.

In *Chicago, etc., R. Co.* v. *Ader* (1915), 184 Ind. 235, 241, 110 N. E. 67 it was said:

"The jury had a right to take into consideration the danger and liability of fires, notwithstanding the statute fixing liability of appellant for the portion of the fires caused by its locomotives."

It was no answer in the *Darling Case* that if a gas leak and explosion in the pipe line occurred, the transmission company would be liable and thus the injured parties compensated. The issue is, what effect, if any, does such possibility have on the fair market value of the property? Most persons do not care to buy lawsuits or land which will involve them in litigation. Damages, even if justly assessed, are never complete compensation after the expense of litigation and the time and vexation connected therewith are expended. Condemnation is a legally forced sale and under the constitution the owner is entitled to be fully and fairly compensated and not left partially short of that goal. The court committed no error in overruling the objections to evidence which show the inconveniences and undesirable burdens placed upon an owner and purchaser which might affect the sale value.

The appellant also moved to strike out the testimony of Carl Wagner after bringing out on cross-examination that he based his knowledge of the rights to be taken by the Electric Company upon a "contract" which he said was presented to the owners by the appellant, apparently in an attempt to purchase the land prior to the bringing of this action. In his testimony he later stated that he was using the wrong term—that he should refer to the contract as "the paper." In the examination of John A. Gerhardt, the owner of the land, the appellant brought out that he likewise was basing his judgment as to what was being taken by the appellant company upon "the contract they offered me." He also stated that this was

the only offer made to him by the appellant prior to the bringing of the suit. We find no error in this connection, first because the paper was never introduced in evidence and there is no way for us to determine whether or not the offer and tender made by the Electric Company was different from that upon which it asked to take the land. In this court the appellant has the burden of proving prejudicial error. Secondly, we must assume under the statutory obligation of a condemnor to first offer to purchase the easement, that the appellant did make a good-faith offer, which was identical with the demands in the condemnation action. Burns' §3-1701; *Indiana Service Corp.* v. *Town of Flora* (1941), 218 Ind. 208, 213, 31 N. E. 2d 1015; *Moore* v. *Ind. & Mich. Electric Co.* (1950), 229 Ind. 309, 95 N. E. 2d 210.

We find no error in the court's ruling.

After a long cross-examination, Albert Woll testified as to possible tile damage, compaction of the soil and that the alleged right-of-way would not be salable. He also added that it was his understanding that the landowner would have no right to erect fences or structures on the right-of-way land. Our examination of the record reveals that the appellant moved "to strike out the testimony of this witness" on the grounds that his testimony "has included elements that have no place and which are not proper from the standpoint of determining damages to the remaining portion of the farm." This motion was far too broad and was not limited to any specific testimony of this witness.

Such a motion must be specific and limited strictly to the testimony to which it is properly applicable. It would be error for a court to sustain too broad a motion, thus striking out relevant and competent testimony. For that reason, trial courts

must exercise unusual care in sustaining motions to strike testimony. Such motions to be sustained must be very concise and specific as to the exact testimony to go out. *O'Brien* v. *Knotts* (1905), 165 Ind. 308, 75 N. E. 594; *Southern R. Co.* v. *State* (1905), 165 Ind. 613, 75 N. E. 272; *McGuffey* v. *McClain et al.* (1892), 130 Ind. 327, 30 N. E. 296; *The City of Logansport* v. *Dykeman et al.* (1888), 116 Ind. 15, 17 N. E. 587.

An examination of the record shows that this witness testified that his family had previously purchased this farm in 1956 at $350.00 an acre and that certain portions of the land were tillable. He gave an estimate of the soybean and other crop products in various years and in general gave testimony which the jury could properly consider in estimating the fair market value of the farm land involved. Such testimony was certainly material and relevant. Even though we may assume that some of his testimony with reference to his opinion as to the damages was not based upon proper elements, the motion was not sufficiently specific as to confine it to the improper portion of the testimony alone.

Damon Lloyd testified that he would place no value on the rights left to the landowner in the easement after the Electric Company acquired the easement. His testimony was to the effect that the rights left in the strip taken by the easement would be more trouble and inconvenience than of value to a farmer. The appellant moved to strike the testimony of this witness "on the ground that he says it is the same as if it had been a fee-simple title which is not a proper foundation for valuation in this case, they are not taking the fee-simple title." Our reading of the record shows that this witness knew the diference between the rights which the appellant was taking

and those left with the landowner, and that he merely considered the rights left with the landowner in the easement as valueless. That was the opinion of the witness. Whether we believe it or not is not the question for us to determine. It is rather for the jury to determine what weight or value, if any, should be given such testimony. We find no error in the court overruling the motion to strike the testimony. In *The Terre Haute and Logansport R. R. Co.* v. *Crawford et al.* (1885), 100 Ind. 550, 556, we said:

> ". . . Under this rule, it was clearly competent for the witness, Behrens, to express his opinion as to what it would be worth to fill up appellees' lots. Of course, the appellant had the right, by cross-examination, to draw out the basis of the witness' opinion, and to show thereby, if he could, that such opinion was of little or no value; but the opinion was none the less competent and admissible in evidence, for whatever it might be worth."

The same conclusion is reached with reference to the motion to strike out the testimony of Carl Wagner, Virgil Gerhardt and John Gerhardt because they stated the same opinion that the value of the easement taken was the same as if the fee-simple had been taken. *Southern Indiana Gas and Electric Co.* v. *Jones* (1960), 240 Ind. 434, 166 N. E. 2d 127.

We come now to the objections made to the testimony of James C. Bauer, a witness for the appellees (owners) on the issue of damages. The record shows upon direct examination the witness' testimony was confined strictly to the question of damages with reference to the easement taken. He stated on direct examination he knew the nature of the right-of-way that was being taken and very briefly stated that in his opinion the damages amounted to the amount of $1200.00 an acre. Upon cross-examination he was asked:

"CQ. What do you understand to be the rights acquired by the Southern Indiana Gas and Electric Company?

"A. A right-of-way and easement, they've taken through there.

"CQ. What is included in that, what do they get?

. . . . .

"A. Possession of the land and their power line through there.

. . . . .

"CQ. What other rights do the Southern Indiana Gas and Electric Company get, if any, by virture of this easement?

"A. I think they have the right to put anything there they want to, any more poles or anything that is needed.

"CQ. Anything they want to, that is your understanding, is that correct?

"A. In the way of poles and power lines, I think that's right.

"CQ. What else do they have the right to put there, you say anything they want to, what does that include?

"A. The farmer don't have any right-of-way across it, unless they give him permission.

"CQ. The farmer can't go across it?

"A. Not unless they give him permission.

"CQ. That is your understanding of what the Southern Indiana Gas and Electric Company gets for this easement, is that right?

"A. They get complete possession, the farmer can't go across unless they get permission; they can go across your farm and you can't build a building or anything like that.

"CQ. They can't run a roadway across there, is that your understanding?

"A. Not without their permission.

"CQ. That is your understanding, is that right?

"A. Yes, that's right.

"If the Court Please, Plaintiff moves to strike the testimony of this witness as to the value of the

so-called damage in the amount of Twelve Hundred ($1200.00) Dollars for the right-of-way on the ground that the witness has demonstrated by his testimony that he does not understand the nature and extent of the rights acquired by the Southern Indiana Gas and Electric Company by virtue of the right-of-way in question, he has made his testimony on the assumption that the Petitioner has possession of the right-of-way, that they can control the matter of access across the right-of-way for road purposes and that they can put anything on there that they want to."

The motion to strike in this case was limited to certain specified testimony. Up to the time the motion was made the record shows there was no other testimony that could have been covered by such a motion. The testimony was based upon an erroneous assumption as to the use of the easement and was therefore not proper.

We are aware of the difficulties confronting a lay witness subject to an extensive cross-examination who is not learned in the intricacies of real property interests and various types of easements. It is one of the most difficult and complicated subject matters of the law. There is a way to avoid such difficulty, however, and this can be done by presenting the question in hypothetical form to the expert witness on value or damages. False or mistaken assumptions by the witness as to the rights taken or remaining in the land would thus be avoided.

Reviewing the direct examination of this witness it appears that his testimony was limited solely to damages, and the motion was therefore sufficiently specific and should have been sustained.

The court erred in refusing to strike the opinion testimony of the witness based upon a false and inaccurate assumption of the facts.

The judgment is reversed with directions to grant a new trial.

Landis, Achor and Jackson, JJ., concur.

Bobbitt, C. J., dissents in part and concurs in part with opinion.

## CONCURRING OPINION

BOBBITT, C. J.—I dissent from that part of the majority opinion which holds that the testimony of the witness Carl Wagner was properly admitted; but concur in the reversal of the judgment because I believe that part of the testimony of Wagner and all of the testimony of the witness, James C. Bauer, was improperly admitted over the timely objection of appellant.

NOTE.—Reported in 172 N. E. 2d 204.