JACKSON H. BEYER ET AL. *v.* STATE OF INDIANA.

[No. 371S85. Filed March 30, 1972. Rehearing denied June 19, 1972.]

*Widaman, Bowser & Reed,* of Warsaw, for appellant.

*Theodore L. Sendak,* Attorney General, *Stephen D. Clase,* Deputy Attorney General, for appellee.

HUNTER, J.—This is an appeal by Jackson and Sarah Beyer, appellants (defendants below) from an award in a condemnation suit in which the State condemned a portion of the appellants' property for highway construction purposes. On October 30, 1969, the State filed its complaint, and on December 16, 1969, the court appointed appraisers who filed their reports on January 2, 1970. They assessed damages in the amount of approximately forty thousand dollars ($40,000.00) to which on January 5, 1970, the State filed exceptions and demanded a jury trial. On March 9, 1970, the trial court on its own motion set the cause for trial on March 30, 1970. On March 24, 1970, the State filed a Motion for Continuance which included an agreement to the continuance by the appellants, and the motion was overruled by the trial court on the same day. Trial by jury commenced on March 30, 1970, and at the conclusion of the evidence the jury returned a verdict in the amount of thirty-two thousand two hundred and fifty dollars ($32,-

250.00). Appellants filed a motion to correct errors which, after some delays, was overruled on January 9, 1971. After more delays an appeal from the denial of the motion to correct errors was finally perfected on November 4, 1971.

Appellants have presented five main contentions of error. They are as follows:

(1) The trial court committed reversible error when it denied the State's motion for a continuance agreed to by appellants.

(2) It was reversible error for the trial court to exclude from evidence certain of appellants' exhibits which were deeds of other properties which had been sold.

(3) Surprise occurred at trial due to the method of delineation on a map prepared by the State and admitted into evidence.

(4) The evidence was insufficient to support the verdict.

(5) Newly discovered evidence was brought to light and it was error for the trial court to refuse to grant a new trial on this basis.

The first question presented is whether it was reversible error to deny the *State's* motion for a continuance to which appellants merely agreed. The issue involves TR. 53.3 concerning continuances which reads in part:

> "Upon motion trial *may* be postponed or continued in the discretion of the court, and *shall* be allowed upon agreement of all the parties or upon a showing of good cause established by affidavit or other evidence." (our emphasis)

There appear then to be three instances where a cause might be continued. First, at any time within the judge's discretion; secondly, where the parties agree to it; and thirdly, upon a showing of good cause by either party. It is the contention of the State that it is *always* within the sound discretion of the trial court whether to grant a continuance. Appellants contend it is discretionary in the first instance but is mandatory in the latter two instances. We agree with appellants.

When the rule speaks of granting a continuance at the court's discretion it uses the word "may". When the rule speaks of granting the continuance when both parties agree or upon a showing of good cause the rule uses the word "shall." The word "may" is permissive in nature while the word "shall" is mandatory. It is stated in the Civil Code Study Commission Comments on TR. 53.3 found at 3 Harvey, *Indiana Practice* 487:

> "The purpose of this rule is to permit the granting of continuances in three cases. First, by the judge in his discretion, for which an appeal ordinarily cannot be taken. ■ Second, a continuance must be granted for good cause, in which case a party may be able to establish reversible error if it is denied. *Third, a continuance must be granted if the parties agree.*" (our emphasis)

Thus, it is clear that when the parties agree to a continuance, the judge has no choice but to grant it.

However, the cause should not be *per se* reversible but should be reversible only if prejudicial. The only affidavits filed with the continuance in this case were filed by ■ the State. The only material before the trial court connecting appellants to the continuance was the written statement, "I hereby agree to continuance of the trial of the above-entitled cause," followed by the signature of appellants' attorney. Appellants did not present any reasons themselves for wanting the continuance nor did they object to the denial of the continuance. For the appellants to have standing to assert that it was reversible error as to appellants for the trial court to deny the *State's* motion for continuance to which appellants simply agreed, it was incumbent upon them to take some positive action to bring to the judge's attention their own need for a continuance.

It is stated in TR. 53.3:

> "A motion to postpone the trial on account of the absence of evidence, can be made *only* upon affidavit, showing the

materiality of the evidence expected to be obtained, and that due diligence has been used to obtain it . . ." (our emphasis)

The State's basis for a continuance was that it was not sure it could have its attorney available on the day of trial. Appellants' contention that the denial was prejudicial was that appellants' counsel did not have sufficient time to prepare for tiral and search the records for comparable sales. However, appellants did not make this known to the judge in any manner whatsoever before trial much less in the form of an affidavit. They simply proceeded to trial where they presented their evidence including a number of experts, with no indication that they were not prepared for trial. The first time we learn that appellants may have needed a delay is *after* an unfavorable verdict! This is too late. Since the appellants failed to indicate to the trial court any individual need for a continuance they cannot now obtain a reversal simply because they agreed to a continuance sought by the State.

Appellants' second allegation of error is that it was reversible error to exclude from evidence a number of deeds concerning sales of properties in the area. An attempt was made to introduce these deeds into evidence both at the very beginning and at the very end of the trial. Appellants did not attempt to establish any basis for their admission merely stating that the deeds spoke for themselves. The deeds concerned sales of lots in the general area which had the consideration for the sale on their face or federal stamps on them to indicate the amount of consideration.

It is not clear but apparently appellants were attempting to have these deeds admitted as evidence of comparable sales. However, appellants never attempted to establish this fact nor did they make any other adequate explanation. There are special problems which arise when there is an attempt to admit evidence of the sale of another piece of property for the purpose of aiding in the valuation of the property in question.

As Justice DeBruler stated in *State* v. *Furry* (1969), 252 Ind. 486, 491, 250 N. E. 2d 590, 593,

> "One need only examine the multitudinous factors which make separate tracts of land similar or dissimilar to realize that the variation in the character of land is limitless. No two tracts of land are identical."

Whether or not properties are similar enough to be considered "comparable" then must also depend on a number of factors including (but not limited to) size, shape, topography, accessibility, use, and closeness of the time of the sale to the present action. In order to be admissible there should be sufficient similarity between the properties so that it can truly be an aid to the jury and not just irrelevant and extraneous matter which would do nothing more than confuse the jury. However, where a reasonable basis for comparison exists then dissimilarities should only affect the weight to be accorded the evidence and not its competency. Therefore the general rule is that, since the admissibility of such evidence cannot be determined by any hard and fast rules, much must be left to the discretion of the trial judge. See, 29A, C.J.S. *Eminent Domain* § 273 (10), 5 *Nichols On Eminent Domain* § 21.31 (3d Ed. 1971). As stated in *Nichols:*

> "Obviously, no two properties can be exactly alike, and no general rule can be laid down regarding the degree of similarity that must exist to make such evidence admissible. It must necessarily vary with the circumstances of each particular case. Whether the properties are sufficiently similar to have some bearing on the value under consideration, and to be of any aid to the jury, must necessarily rest largely in the sound discretion of the trial court, which will not be interfered with unless abused." 5 *Nichols on Eminent Domain, supra,* pp. 21-54 to 21-56.

The lots referred to in appellants' exhibits were all small residential lots. The land being taken in this case is a por-

tion of an approximately one hundred forty-four (144) acre farm. It was admitted by both sides, however, that the highest and best use of this property was for residential purposes. Evidence as to the highest and best use is clearly admissible and according to the case of *Northern Ind. Pub. Serv. Co.* v. *Darling* (1958), 239 Ind. 237, 154 N. E. 2d 881, the acceptance of evidence of the voluntary prices for lots in the area of a taking of a farm tract with a highest and best use being for residential purposes was not error. However, there is no indication that it would have been error for the court to *exclude* the evidence if it had felt it would be of no aid in establishing the value of the property taken. In the case of *Northern Ind. Pub. Serv. Co.* v. *McCoy* (1959), 239 Ind. 301, 157 N. E. 2d 181, decided a few months after the *Darling* case, *supra*, the Court quoted from *Nichols:*

> "It is well settled that if land is so situated that it is actually available for building purposes, its value for such purposes may be considered, even if it is used as a farm or is covered with brush and boulders. The measure of compensation is not, however, the aggregate of the prices of the lots into which the tract could be best divided, since the expense of cleaning off and improving the land, laying out streets, dividing it into lots, advertising and selling the same, and holding it and paying taxes and interest until all the lots are disposed of cannot be ignored and is too uncertain and conjectural to be computed. The measure of compensation is the market value of the land as a whole, taking into consideration its value for building purposes if that is its most available use." 239 Ind. at 308-309, 157 N. E. 2d at 185.

The Court went on to quote from a Pennsylvania case stating,

> "Equally improper is evidence showing how many building lots the tract under consideration could be divided into, and what such lots would be worth separately. It is proper to inquire what the tract is worth, having in view the purposes for which it is best adapted; but it is the tract, and not the lots into which it might be divided, that is to be valued." 239 Ind. at 309, 157 N. E. 2d at 185.

Thus, it appears that the value of small individual lots standing alone is not a proper basis for determining the value of a large unimproved tract of land such as we have in this case.

Unlike the *Darling* case, there was no showing that the lot sales in this case were voluntary. Also, immediately preceding appellants' last attempt to introduce these exhibits into evidence, appellants' own expert witness testified that he did not feel the sales of the lots in question constituted comparable sales. The appellants presented six expert witnesses who testified to the value of the tract taken. One of the appellants also testified as to four different sales of portions of his property and the deeds to those sales were admitted into evidence. Appellants' attorney was even allowed to testify as to the price of four recent sales of small lots in the general area. Appellants contend the exhibits should be admitted because in conjunction with development costs, they would show a value for subdivision purposes. However, appellants made no attempt to introduce these exhibits in conjunction with anything and we therefore need not answer this question at this time. When viewing the totality of the circumstances in this case we cannot say the trial judge abused his discretion in excluding the exhibits.

Appellants' third basis for demanding a new trial is the contention that "surprise" occurred in the course of the trial. They allege that due to the way in which a map of area taken was prepared by the State they were led to believe that they would have access onto the new highway. This in turn allegedly caused appellants to incorrectly evaluate the fair market value of the residue. In order to obtain a new trial due to accident or surprise there must be a showing that the complaining party used ordinary prudence to avoid the surprise. *Working* v. *Garn* (1897), 148 Ind. 546, 47 N. E. 951; *Jessop* v. *Werner Transportation Co.* (1970), 147 Ind. App. 408, 261 N. E. 2d 598; *New York Cent. R. Co.* v. *Sarich* (1962), 133 Ind. App. 516, 180 N. E. 2d 388.

The complaint indicated that the highway being built was to be a limited access facility. If this were noted by appellants or their attorneys should it not place them on guard as to the possibility that no access on to the highway would have been immediately available to them? When appellants examined the map they should have questioned exactly where the points of access onto the highway were to be located, and failure to do so indicates a lack of diligence in this instance.

Additionally, there is evidence in the transcript that appellants were aware of the limited access nature of the proposed highway and actually submitted evidence on the issue. At the close of the State's case and before the presentation of rebuttal evidence by the appellants the following occurred:

"MR. BOWSER: Defendants offer in evidence the description of the property taken as part of the complaint in this case.

So we have an accurate description of what limited access was and exactly, in English, what the taking does as far as the access is concerned.

MR. GARRARD: We have no objection, Your Honor.

THE COURT: There being no objection, Defendants' Exhibit W is now received in evidence in this cause.

MR. BOWSER: Defendants offer in evidence Defendants' Exhibit X, being the map of the property taken in the case of Oliver Frederick Beyer and the description of the property taken from him, said property showing the intersection to which reference has been made in the testimony of this case just south of the Jackson Beyer property.

MR. GARRARD: I fail to see the relevance. I don't have any particular objection to it, but I suppose we ought to object. It is just cluttering up the record. I don't see where it has any materiality of this lawsuit.

MR. BOWSER: The point is to show how these people get on Highway 30 when built, how they get off of it. At that intersection. How much inconvenience there is to it.

MR. GARRARD: We will withdraw our objection, if he wants to put it in. He is just cluttering up the record.

THE COURT: There being no objection, Defendants' Exhibit X will be received and read into evidence.

MR. GARRARD: Your Honor, might we start passing these to the Jury?

MR. BOWSER: That's a good idea. Thank you."

It is therefore clear that appellants were aware of the situation, at least at this point in the course of the trial. If appellants had felt that further evidence on this issue and expert testimony as to the affect of this on the total damages, if any, were necessary they did not make this known to the trial court. Appellants made no motion for a continuance due to this alleged surprise. In the case of *Cushman Motor Delivery Co.* v. *McCabe* (1941), 219 Ind. 156, 36 N. E. 2d 769, a party who assigned surprise as a reason for a new trial made no motion for a continuance, instead the party elected to proceed with the trial and rely on the evidence at hand. It was held that the trial court did not err in refusing to grant a new trial on this ground. The analogy to the situation in the case at bar is apparent. Appellants having become aware of the information in question did not seek a continuance but chose to proceed on the evidence at hand. Coupled with the lack of diligence on the appellants' part it surely was not error for the trial court to deny a new trial on the issue of surprise.

Appellants' fourth contention is that the evidence was insufficient to support the award. It is the well established rule that this Court will not disturb an award for damages when the amount is within the bounds of the probative evidence adduced at trial. *Annee* v. *State* (1971), 256 Ind. 687, 271 N. E. 2d 711; *City of Indianapolis* v. *Schmid* (1968), 251 Ind. 147, 240 N. E. 2d 66; *Public Service Co. of Ind.* v. *Levenstein Bros. Realty Co.* (1965), 246 Ind. 520, 207 N. E. 2d 202; *State* v. *Monninger* (1962), 243 Ind. 174, 182 N. E. 2d 426. The expert opinions as to the total damages in the case at bar ranged from twenty-seven thousand three hundred and fifty dollars ($27,350.00) to fifty-nine thousand one hundred and twelve dollars ($59,112.00). One of the

appellants testified that the damages were approximately seventy-five thousand dollars ($75,000.00). The verdict was for thirty-two thousand two hundred and fifty dollars ($32,-250.00). This is clearly within the bounds of the probative evidence. In addition, three of the appellants' *own* witnesses placed the amount of damages between thirty-one thousand dollars ($31,000.00) and thirty-three thousand dollars ($33,-000.00). There can be no doubt that the evidence was sufficient to sustain the verdict.

Appellants' final contention is that a new trial is required because of newly discovered evidence. The new evidence is an option to purchase acreage on the south side of the land at issue in the present case. The option was not granted until after the trial. Appellants allege that it is a "comparable" and if admitted into evidence in this cause would indicate that a higher value should be placed on the tract in question.

Motions for a new trial on the grounds of newly discovered evidence are looked upon with disfavor. *Bartley* v. *Chicago & E. I. Ry. Co.* (1942), 220 Ind. 354, 41 N. E. 2d 805; *Clemans Truck Lines* v. *Vaughn* (1966), 139 Ind. App. 404, 220 N. E. 2d 351; *Silver Fleet Motor Exp. Co.* v. *New York Cent. R. Co.* (1963), 134 Ind. App. 696, 188 N. E. 2d 829; *New York Cent. R. Co.* v. *Sarich, supra; Matis* v. *Yelasich* (1956), 126 Ind. App. 287, 132 N. E. 2d 728. The granting or refusal of a new trial on the basis of newly discovered evidence is a matter within the sound discretion of the trial court. *Fultz* v. *State* (1968), 250 Ind. 43, 233 N. E. 2d 243; *Farley* v. *State* (1962), 243 Ind. 445, 185 N. E. 2d 414; *Key* v. *State* (1956), 235 Ind. 172, 132 N. E. 2d 143; *Clemans Truck Lines* v. *Vaughn, supra; New York Cent. R. Co.* v. *Sarich, supra.* In order to grant a new trial on this issue, the newly discovered evidence must be such as to raise a strong presumption that, in all probability, it will bring about an opposite result at another trial. *Taylor* v. *State* (1971), 256 Ind. 92, 267 N. E. 2d 60; *Marshall* v. *State* (1970), 254 Ind. 156, 258 N. E. 2d 628; *Spears* v. *State*

(1970), 253 Ind. 364, 254 N. E. 2d 196; *Fultz* v. *State, supra.* Assuming without deciding that such an option is competent evidence of a comparable sale, appellants have failed to establish that this alleged comparable is so much like the tract in question that its introduction into evidence is likely to bring about a different result. The only assertion indicating similarity is that it is adjacent to appellants' land and involved a relatively large acreage. It should also be noted that three of appellants' own expert witnesses estimated the damages at approximately the amount awarded by the jury. Under such circumstances it seems most unlikely that this evidence would produce a different result upon retrial, and the trial court did not abuse its discretion in denying a new trial on these grounds. When faced with similar situations, courts from other jurisdictions have generally refused to grant a new trial. See, *People* v. *Brusati* (1963), 223 Cal. App. 2d 643, 35 Cal. Rptr. 820; *Luby* v. *City of Dallas* (Tex. Civ. App. 1965), 396 S. W. 2d 192, err. ref. no rev. err.; *Housing & Redevelopment Authority* v. *Zweigbaum* (1960), 257 Minn. 233, 100 N. W. 2d 719; *Randle* v. *Kansas Turnpike Authority* (1957), 181 Kan. 416, 312 P. 2d 235.

Finding no grounds for reversal in any of appellants' contentions, the judgment of the trial court is affirmed.

Judgment affirmed.

Arterburn, C. J., DeBruler, Givan and Prentice, JJ., concur.

NOTE.—Reported in 280 N. E. 2d 604.