PHILIP J. CAITO, THEODORA CAITO, HUSBAND AND WIFE *v.* STATE OF INDIANA.

[No. 2-672A18. Filed September 27, 1973. Rehearing denied November 7, 1973.]

*James R. Nickels,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *John T. Carmody,* Deputy Attorney General for appellee.

WHITE, J.—A jury awarded the appellants (landowners) $317.00 for the State's taking of some 167 square feet of their total land area of approximately 14,100 square feet. The taking was for an Interstate Highway interchange in the city of Indianapolis. There were no buildings on the land taken, but on the residue there are two vacant one-family houses and a vacant cement block building which formerly housed a neighborhood grocery operated by a tenant of landowners, a non-conforming use in an area zoned for light industry. Landowners appeal. We affirm.

The $317.00 award is in conformity with the testimony of the State's only expert witness who testified that there was no damage to the residue by the *taking* and that he valued the land taken at $1.90 per square foot. Landowners' expert had valued the land taken at $1.00 per square foot.

He also testified there was damage to the residue. He fixed the value of the residue at $17,438.00 less than the value of the whole property prior to the taking, but he did not attribute this depreciation wholly to the *taking* of the 167 square feet of land. In fact he said the taking was only a small part of the damage. The bulk of the depreciating factors he mentioned were effects of the "project", the effect on the neighborhood store of the removal of the neighborhood, the relocation of Tenth Street from the south side to the north side of the property, the expense of removing existing buildings not adaptable to industrial use, the expense of securing variances from set-back, parking ratio and other requirements, or a use variance to permit commercial use, and the isolating effect of the interstate highways making the property virtually a peninsula.

We note that all of the alleged damages this witness mentioned, except for the necessity of variances relating to area deficiency, would have existed even if the interchange had been located just a few feet to the east so that none of it would be on landowners' property. Which is to say, that it was the location of the Interstate Highways in the neighborhood of the property, rather than the taking of the strip of land, which depreciated the property.

The landowner himself testified to a before value of $75,-000.00 and an after value of $30,000.00, placing his damage at $45,000.00. He testified to facts indicating that his tenant discontinued the non-conforming store use in 1968 because the State bought up houses for the highways and let them stand vacant, and thereby directly and indirectly destroyed the neighborhood.

It would appear from the foregoing that by the rule stated in *Beyer* v. *State* (1972), 258 Ind. 227, 280 N.E.2d 604, 610, 30 Ind. Dec. 107, 115, the award is within the bounds of the probative evidence adduced at the trial and cannot be disturbed. Owners concede that the range

of probative evidence as defined in *Beyer*, is from the lowest amount to the highest amount of damages to which the witnesses have testified. However, it is asserted that here the least amount ($317.00) does not include the cost of petitioning for a variance to use the premises for commercial purposes, a use not permitted in an industrial district without a use variance. The contention that the lowest permissible award must include the variance cost is premised on the contention that the witnesses are in agreement "that after the appropriation the highest and best use of the property was for commercial purposes" and that "the property enjoyed a non-conforming commercial use before the appropriation".

We have carefully examined the evidence and fail to find the unanimity claimed. Even the owners' expert, when asked, "What is the highest and best use of that property after the project is completed, after July 1, 1970?", answered that "the highest value would be whatever the property owner could get out of it." And further, "I would assume whatever use he could put the land to if permitted." While he testified at great length concerning the character of use restrictions under the commercial classification and the necessity for an area and set-back variance if the property was to be used for a commercial purpose, he did not state that commercial use would be the highest and best use. Perhaps that is a permissible inference from his whole testimony but certainly not the only inference.

On the other hand the State's expert witness did testify that the highest and best use of the property was commercial, that it was zoned for industrial use, and that a variance would be required to permit the property to be used for commercial purposes. He testified to nothing, however, which might suggest that either the taking or the building of the highway was responsible for the highest and best use being commercial rather than industrial. He testified to nothing concerning

the prior nonconforming use or if, when, or why it had been discontinued. He did, however, testify that the residential neighborhood disintegrated merely because it got old "and the highway didn't have anything to do with it."

Our examination of the record requires us to agree with the State's contention that there is no evidence that the taking of the 167 square feet of land caused the cessation of the nonconforming use and the consequent loss of the right to use the industrially zoned property for a commercial use. The inference most favorable to the owners is that the taking of other surrounding properties for the highway left the store without a market area and it therefore ceased doing business. Owners have made no argument and cited no authority to the effect that this destruction of the market area which in turn terminated the right to use the property for a food market constituted the taking of a substantial right attached to the use of the property. We therefore accept the State's contention that the damages to owners' real estate, other than the value of the 167 square feet actually taken, are damages suffered by the public generally and are not special damages peculiar to owners' real estate. *Young* v. *State* (1969), 252 Ind. 131, 246 N.E.2d 377.

The testimony of State's expert, which we have summarized, is a further reason for our not deciding whether the loss of the right to a non-conforming use constituted a taking. It supports the inference that the loss of market area was the result of the neighborhood getting old and not of the State taking houses for the highway. Whether he was right or wrong his evidence was before the jury and it fully supports his figure of $317.00. The jury had a right to agree with him and the amount of the verdict indicates that it did.

Judgment affirmed.

Buchanan, P.J., and Sullivan, J., concur.

Note.—Reported at 301 N.E.2d 376.