CITY OF INDIANAPOLIS ON BEHALF OF THE DEPARTMENT OF METROPOLITAN DEVELOPMENT *v.* JOHN M. HEETER AND MARION COUNTY TREASURER.

[No. 2-275A22. Filed October 7, 1976.]

Rex P. Killian, John C. O'Connor, Ruckelshaus, Bobbitt & O'Connor, of Indianapolis, for appellant.

Harry L. Sauce, III, Webb & Webb, of Noblesville, for appellees.

ROBERTSON, C.J.—This appeal is from the judgment of the Hamilton Circuit Court in a proceeding brought by the City of Indianapolis (City) to appropriate and condemn a parcel of land owned by John M. Heeter (Heeter) for the purpose of redevelopment under the provisions of the Redevelopment Act of 1945.

The cause of action was filed on April 25, 1973. Heeter filed exceptions to the appraisers' report and after a jury trial was awarded damages in the amount of $5,700, plus interest.

The City presents the following issues for our review:

1. Whether the trial court committed error in refusing to give Plaintiff's Tendered Instruction No. 9;

2. Whether the jury's verdict was supported by sufficient evidence;

3. Whether the damages awarded were excessive and contrary to the weight of the evidence; and

4. Whether the trial court committed error in admitting and excluding certain evidence offered by the respective parties.

We find no reversible error and accordingly affirm.

The record reveals that Heeter owned a single unimproved lot, consisting of approximately 424 square feet, located in a redevelopment project known as the West Neighborhood Development Program. The project area, consisting of 7.4 acres, was being condemned by the Department of Metropolitan Development, City of Indianapolis under the authority of the Redevelopment Act of 1945.

Approximately twenty individuals owned lots in the project area. The entire area was virtually undeveloped with few structures existing on the blighted land. At the time of taking, the subject lot was zoned residentially for single family dwelling constructions.

Heeter witness William Wise, an adjacent lot owner, testified that he owned eighteen (18) lots in the redevelopment area. Based upon his prior dealings in real estate transactions and his personal knowledge of the area, he offered an opinion as to the highest and best use and the fair market value of the condemned lot. Wise testified that in his opinion the subject lot was definitely high commercial property with a value of four dollars a square foot or approximately $15,000 for the entire lot.

Further testimony was given by Heeter as to the highest and best use and fair market value of his lot. In his opinion the subject lot was prime commercial property with a value of five dollars a square foot or $18,000 for the entire lot.

The opinions offered by Wise and Heeter were based upon the premise that the condemned lot could be combined with the other lots in the redevelopment area so as to make the entire area available for commercial development. Both witnesses felt that this area was prime commercial property because a cloverleaf interchange was being built at Rural Street and Keystone Avenue in Indianapolis as part of Interstate Highway 70. These witnesses believed that the increased flow of traffic resulting from this construction would support various types of commercial development in this area.

The City's expert witness Richard Nichols testified that in his opinion the subject property had a value of four cents a square foot or $175 for the entire area. Nichols stated that in making his appraisal he considered the highest and best use of the condemned lot alone rather than in combination with the other lots in the project area.

## I.

The City raises three issues relating to the same legal principle. We will discuss and dispose of these issues collectively.

The legal question underlying these issues is whether or not, for purposes of determining the highest and best use and fair market value of condemned property, the jury may consider as a factor that the land would have a higher and more valuable use if it is combined or assembled with other parcels of real estate not owned by the condemnee so as to make a sufficiently large tract of land for a projected purpose when the condemned property standing alone could not support such a purpose.

The City cogently argues that this combination of property may not be considered in fixing valuation when such combination or assemblage is not shown to be a reasonable probability. The City maintains that while the opinions offered at trial by Heeter's witnesses were based upon the premise of combining the subject lot with other property in the development area for commercial use, there was no showing by Heeter that such assemblage was a reasonable possibility and, thus, the jury's verdict, presumably being based upon such speculative testimony, was not supported by sufficient evidence and was grossly excessive.

At trial, the City tendered the following instruction on assemblage adaptability which the trial court refused to give:

"Plaintiff's Tendered Instruction No. 9—You are instructed that if the adaptability of the defendant's lot depends upon it being assembled with other lots so as to make a tract of land sufficient in size for a projected purpose, such artificially created adaptability is too remote and speculative to be considered by you in determining the valuation of the defendant's lot."

The City argues that this tendered instruction would have correctly informed the jury on the law governing the assemblage issue and that failure to give the instruction was reversible error.

We do not agree with the City's contentions.

In a condemnation case, the jury is charged with the duty of determining the fair market value of the condemned real

estate. Fair market value has been defined by our Supreme Court in *Southern Indiana Gas & Electric Co. v. Gerhardt* (1961), 241 Ind. 389, 393, 172 N.E. 2d 204, 205, to be the following:

"The fair market value is a determination of what the land may be sold for on the date of the taking if the owner were willing to sell. Anything affecting the sale value at that time is a proper matter for the jury's consideration in attempting to arrive at a fair market value."

In determining the fair market value, the jury may properly consider as a factor the use to which the condemned property might reasonably be adapted even though the property was not being devoted to such use at the time of taking. The rule governing the adaptability factor was succinctly stated in *State v. Tibbles* (1954), 234 Ind. 47, 49, 123 N.E.2d 170, 171:

"It has long been the established rule that in determining the value of property taken by condemnation or appropriation the availability and adaptability of property for uses other than that to which it is applied at the time of taking, so far as it may appear from the evidence, may be taken into consideration, but inquiry as to damages cannot go into an intended specific use." (cases omitted.)

When the value of the land taken is enhanced by uses to which the condemned property might be adapted, the owner is entitled to the market value as so enhanced. *State v. City of Terre Haute* (1968), 250 Ind. 613, 238 N.E.2d 459; *State v. Tibbles, supra.*

The City does not contend that adaptability is not a proper element of value to be considered in determining the amount of damages to be assessed in eminent domain proceedings. However, the City urges us to limit the applicability of adaptability when, as in the case at bar, the adaptable use depends upon the principle of assemblage.

The City states that the following general rule of law, upon which its tendered instruction was based, has been universally accepted and urges that we accept this rule as law in Indiana.

"If adaptability depends upon the particular parcel being assembled with other parcels, so as to make a tract sufficient in extent to render it useful for the projected purpose, such artificially created adaptability is considered too remote and speculative to be considered in fixing valuation." 3, 4 Sackman, *Nichols on Eminent Domain,* §§ 8.61 n. 2 and §§ 12.21 n. 5, (3rd Ed. 1971.)

We are not able to approve the City's proposition.

This Court has previously stated in *State* v. *Williams* (1973), 156 Ind. App. 625, 297 N.E.2d 880, 882, quoting from 4 Sackman, *Nichols on Eminent Domain* § 12.314 (3rd Ed. 1971), that:

"A use for which a piece of land is especially available need not be excluded from consideration merely because the availability depends upon extrinsic conditions, the existence or continuance of which is not within the control of the owner of the land.

\* \* \*

In fact, it is not necessary that the extrinsic improvement which will make the land specially available for a particular purpose be in existence when the land is taken, if the probability of its being constructed in the immediate future is so strong as to have an affect upon present market value. *Thus, where the adaptability for a specific use depends upon the land being used in combination with lands belonging to other persons, such use may be shown if the possibility of such combinations is so great as to have a definite effect in enhancing the market value of the property.*" (Emphasis added.)

We are of the opinion that if the highest and best use of a parcel of land can be made only in combination with other parcels and that the adaptability of such condemned property depends on this combination, then such adaptability may properly be considered by the jury in determining the amount of damages if the possibility of such combination is reasonably sufficient to affect the market value. *See: United States* v. *Fuller* (1973), 409 U.S. 488, 35 L.Ed.2d 16, 93 S.Ct. 801; *Olson* v. *United States* (1934), 292 U.S. 246, 78 L.Ed. 1236, 54 S.Ct. 704; *State* v. *Williams, supra.*

If the trial court had given Plaintiff's Tendered Instruction No. 9, the jury would have been prohibited from considering the assemblage adaptability factor as an element in determining the fair market value of the condemned lot. The giving of this instruction would have improperly invaded the province of the jury as the triers of fact.

We conclude that the opinions offered by Heeter's witnesses were proper matters for the jury's consideration in attempting to arrive at a fair market value. Therefore, we can find no error in the trial court's refusal to give Plaintiff's Tendered Instruction No. 9.

Additionally, we do not find error in the trial court's refusal because another instruction read by the trial court adequately covered the question of remote and speculative damages. The trial court gave the following instruction on speculative damages:

"PLAINTIFF'S TENDERED INSTRUCTION NO. 8

It has long been the established rule that in determining the value of property taken by condemnation or appropriation the availability and adaptability of the property for uses other than that to which it is applied at the time of taking, so far as it may appear from the evidence, may be taken into consideration. The pre-existing use of the land is not the sole criterion by which the value is measured.

The inquiry as to damages cannot go into an intended specific future use, because such damages are speculative, and that such inquiry must be confined to the land with reference to its use and condition at the time of taking, and not as to what use the owner might be contemplating to put it."

It is well settled in Indiana that it is proper for the trial court to refuse a tendered instruction if the propositions stated therein are amply covered by other instructions given. *Ashton* v. *Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210; *Link* v. *Sun Oil Co.* (1974), 160 Ind. App. 310, 312 N.E.2d 126; *Richmond Gas Corp.* v. *Reeves* (1973), 158 Ind. App. 338, 302 N.E.2d 795.

The City next contends that even if the jury could properly consider the assemblage adaptability factor in making their

determination, Heeter did not present sufficient evidence to show that assemblage was a reasonable possibility affecting the market value. Thus, the City argues that the jury's verdict was not supported by sufficient evidence and the award of damages was grossly excessive and contrary to law.

As to both the sufficiency of the evidence argument and the excessive damages argument, the City has failed to provide this Court with any authority to support these contentions of error. Therefore, such errors, if any, are deemed waived. Ind. Rules of Procedure, Appellate Rule 8.3 (A) (7) ; *Offutt* v. *Sheehan* (1976), 168 Ind. App. 491, 344 N.E.2d 92.

In any event the issue is simply resolved.

In this case conflicting evidence was presented as to the fair market value and best and highest use for the condemned parcel. We have already determined that the jury was properly allowed to consider the evidence concerning assemblage adaptability. The members of the jury, being the triers of fact, were the judges of the weight of the evidence and it was within their province to determine from the evidence the possibility of assemblage adaptability for this land.

This Court is limited to an examination of that evidence and the reasonable inferences drawn therefrom which support the verdict in determining if sufficient evidence of probative value exists. *Montgomery Ward & Co., Inc.* v. *Tackett* (1974), 163 Ind. App. 211, 323 N.E.2d 242. And when the evidence is in conflict and reasonable minds can differ on an issue or reach different conclusions, we are bound by the jury's finding. *Lloyd* v. *Weimert* (1970), 146 Ind. App. 666, 257 N.E.2d 851.

In reviewing this record, we are unable to say that the jury could have only reached one conclusion as to the fair market value from the evidence presented. Therefore, we must conclude that the jury's verdict was supported by sufficient evidence.

The award of $5,700 damages was clearly within the bounds of the probative evidence presented at trial concerning the fair market value of the defendant's land. Therefore, the City's assertion that the jury's verdict was grossly excessive must also fail. *Beyer* v. *State* (1972), 258 Ind. 227, 280 N.E.2d 604.

## II.

The City of Indianapolis finally alleges that the trial court committed several evidentiary errors in admitting and excluding offered evidence.

Initially, the City maintains that the trial court erred in sustaining Heeter's objections to its questions propounded to his witness, William Wise, and to the defendant-landowner during cross-examination.

The record shows that witness Wise owned several lots adjacent to the subject property. Wise testified that he had purchased these lots after learning that Interstate 70 was to go through this area. He began buying property in this area in 1966 and purchased his last lot in 1969 or 1970. During cross-examination the City attempted to ascertain the prices Wise had paid for these lots. Heeter objected to this line of questioning on the grounds of relevancy. The trial court sustained the objections stating that the buying of Wise's lots and the prices paid therefor were too remote in time to be relevant in fixing the fair market value for the subject property.

The record also reveals that Heeter owned a parcel of land approximately three blocks north of the subject property which parcel was taken by condemnation in 1972. The City, while cross-examining Heeter, attempted to establish that this parcel was comparable to the subject property and tried to introduce the fair market value of this previously taken lot into evidence. Heeter objected to the City's questions

concerning the value of this other lot. The trial court also sustained these objections for the reason that:

". . . the character, situation, the usability and improvements of the two tracts that we're talking about here, ah—there has not been adequate foundation linking the two tracts, ah—by way of character, situation, usability and improvements. I think that there's a, this would have to be overcome." (Tr. pp. 206, lines 19-26, 207-214, lines 1-13.).

The City argues that Heeter's witnesses should have been allowed to answer the propounded questions concerning the value of these comparable lots in that such testimony would have assisted the jury in determining the fair market value of the subject property.

As a general rule the value of a "comparable" property, which is property similar to the property being taken, is admissible in condemnation proceedings to aid in the determination of the fair market value of the property being taken. *Gradison* v. *State* (1973), 260 Ind. 688, 300 N.E.2d 67; *Beyer* v. *State* (1972), 258 Ind. 227, 280 N.E.2d 604; *Trustees of Indiana University* v. *Williams* (1969), 252 Ind. 624, 251 N.E.2d 439; *Northern Indiana Public Service Co.* v. *Darling* (1959), 239 Ind. 237, 154 N.E.2d 881. However, before such evidence is admissible the properties must be considered "comparable."

Our Supreme Court in discussing the admissibility of evidence of "comparable" properties in *Beyer* v. *State* (1972), 258 Ind. 227, 280 N.E.2d 604, 607-608, stated that:

"Whether or not properties are similar enough to be considered 'comparable' then must also depend on a number of factors including (but not limited to) size, shape, topography, accessibility, use, and closeness of the time of the sale to the present action. In order to be admissible there should be sufficient similarity between the properties so that it can truly be an aid to the jury and not just irrelevant and extraneous matter which would do nothing more than confuse the jury. However, where a reasonable basis for comparison exists then dissimilarities should only affect the weight to be accorded the evidence and not its com-

petency. Therefore the general rule is that, since the admissibility of such evidence cannot be determined by any hard and fast rules, much must be left to the discretion of the trial judge. See, 29A C.J.S. Eminent Domain § 273(10), 5 Nichols on Eminent Domain § 21.31 (3d. Ed. 1971). As stated in Nichols:

'Obviously, no two properties can be exactly alike, and no general rule can be laid down regarding the degree of similarity that must exist to make such evidence admissible. It must necessarily vary with the circumstances of each particular case. Whether the properties are sufficiently similar to have some bearing on the value under consideration, and to be of any aid to the jury, must necessarily rest largely in the sound discretion of the trial court, which will not be interfered with unless abused.' 5 Nichols on Eminent Domain, supra, pp. 21-54 to 21-56."

Whether or not such evidence is admissbile is within the discretion of the trial court. In the case at bar, we are unable to say that the trial court abused its discretion in sustaining Heeter's objections to the City's propounded questions of both witnesses concerning the value of the allegedly comparable properties.

This Court will not disturb the discretionary rulings of the trial court unless a clear abuse of discretion is shown. *Freeman* v. *Freeman* (1973), 159 Ind. App. 98, 304 N.E.2d 865; *Schroer* v. *Edward J. Funk & Sons, Inc.* (1968), 143 Ind. App. 223, 233 N.E.2d 680. Finding no abuse of discretion, the rulings of the trial court must be upheld.

The City next contends that the trial court erred in sustaining an objection and motion to strike made by Heeter's counsel during the direct examination of the City's expert witness, Richard Nichols.

Witness Nichols was describing the factors he used in his appraisal of the condemned property when Heeter's counsel objected that the answer given was not responsive to the question. The trial judge sustained the objection and ordered the testimony stricken. Immediately thereafter, a second

question was posed with a similar objection and ruling by the trial court.

The City, relying upon *Swift and Company* v. *Palmer* (1967), 141 Ind. App. 378, 228 N.E.2d 38, argues that Heeter could not properly move to strike their witness's testimony on the grounds of unresponsiveness because Heeter was not the party asking the question.

We agree with the City's contention. The law is sufficiently clear in Indiana that only the party asking the question can object and move to strike on the grounds that the answer is unresponsive. *Northern Indiana Public Service Co.* v. *Otis* (1969), 145 Ind. App. 159, 250 N.E.2d 378; *Swift and Company* v. *Palmer, supra; See:* 28 I.L.E. Trial, § 67, p. 69.

The trial court committed error in sustaining the Heeter's motion to strike. However, we are of the opinion that such error was harmless and does not warrant reversal because the City has failed to show how it was prejudiced by the trial court's defective ruling. Having failed to sustain its burden of showing prejudicial error, the City is not entitled to a reversal on this point.

Next, the City argues that the trial court erred in allowing Heeter to give rebuttal testimony regarding a comparable piece of property owned by him in support of his direct examination testimony as to the fair market value of the subject property.

We conclude that the City's contention must fail for two reasons.

It is the City's contention that Heeter's rebuttal testimony should have been a part of his evidence in chief. As a general rule, a party should present all his evidence during his case in chief and not save a part of it to present for the first time on rebuttal. *Waugaman* v. *Gary Methodist Hospital of Gary, Inc.* (1972),

151 Ind. App. 279, 279 N.E.2d 240. However, the order of proof is largely within the sound discretion of the trial court and we will not reverse the trial court's decision unless a clear abuse of the court's discretion is shown. *Board of Commissioners of Delaware County* v. *Briggs* (1975), 167 Ind. App. 96, 337 N.E.2d 852; *Waugaman* v. *Gary Methodist Hospital of Gary, Inc. supra; Indianapolis Transit Inc.* v. *Moorman* (1963), 134 Ind. App. 572, 189 N.E.2d 111.

We cannot say, as a matter of law, that the trial court abused its discretion in allowing Heeter to offer this rebuttal evidence.

Furthermore, the City fails to show how it was prejudiced by the admission of the rebuttal testimony. As previously stated, the burden of showing prejudicial error rests with the appellant, and in the absence of such a showing, reversible error does not exist.

The City next contends that the trial court erred in admitting into evidence defendant's exhibit "A" which was a document depicting the preliminary plans of the Indiana State Highway Commission for an interchange at Interstate Highway 70 and Rural Street.

Defendant's exhibit "A" was offered into evidence through defendant's witness William Wise who testified that he had personal knowledge of the proposed plans for the construction of a cloverleaf system in the redevelopment area and that as a property owner he was familiar with the general area. The City objected to the introduction of this exhibit on the grounds of hearsay in that Wise did not prepare the document being offered. The trial court overruled the City's objection for the reason that the witness had testified that he had personal knowledge of the area and the plans depicted by defendant's Exhibit "A".

The City argues in support of its contention that defendant's exhibit A and witness Wise's testimony concerning the scene depicted in this exhibit constituted hearsay evidence.

The City further argues that this document did not accurately represent an existing place or thing.

The following general rule, found in 13 I.L.E., Evidence § 164, at 42-43 and quoted with approval in *Freeman* v. *King* (1967), 141 Ind. App. 655, 661, 231 N.E.2d at 165, is dispositive of the City's arguments:

> "Ordinarily, courts receive private or unofficial maps, diagrams, or sketches for the purpose of giving a representation of objects and places which generally cannot otherwise be as immediately shown or described by witnesses, and when such documents are proved to be correct or are offered in connection with the testimony of a witness, they are admissible as legitimate aids to the court or jury.
>
> * * *
>
> Whether or not it is proper to admit maps, diagrams, or the like in a particular case is a question resting in the discretion of the trial court. . . ."

The admission or exclusion of documentary evidence rests within the discretion of the trial court. A proper foundation for the admission of such evidence must necessarily be laid, and if the trial court, within its discretion, is satisfied as to the document's validity, such evidence may be admitted. This Court will not disturb the rulings of the trial court unless an abuse of discretion is shown.

We are unable to say that the trial court abused its discretion in allowing defendant's exhibit A and the oral testimony thereon to be admitted into evidence.

Furthermore, even if error had existed in the admission of this evidence such error would have been harmless because witness Wise was permitted to orally testify as to the proposed State Highway plans without objection at another point in the trial.

Next, the City charges that the trial court committed reversible error by not sustaining the City's pre-trial motion for an Order in Limine.

The record reveals that prior to the introduction of evidence, the City made an oral motion for an Order in Limine which requested, in part, that Heeter be restrained from asking questions concerning federal funding of the redevelopment program for the project area in which the subject property resided. The trial court took this motion under advisement, reserving the right to rule upon the matter when it arose at trial.

During the trial, Heeter asked the City's witness Kenneth Kountz various questions about the funding of this redevelopment program. The City objected to this line of questioning, and the trial court sustained the objections before the witness answered.

This Court in *Marsh* v. *Lesh* (1975), 164 Ind. App. 67, 326 N.E.2d 626, 628 disposed of an argument similar to the one advanced by the City by stating that:

"The granting of a motion in limine is an adjunct of the inherent power of trial courts to admit and exclude evidence. *Burrus* v. *Silhavey* (1973), [155] Ind. App. [558], 293 N.E.2d 794. It must be noted that ordinarily the denial of a motion in limine can occasion no error; the objectionable occurrence is the improper admission of items in evidence. Therefore, the standards of review applicable to questions concerning the admission of evidence must prevail in the case at bar.

"In determining the propriety of the admission of certain items in evidence in the case of *Wilson* v. *Dexter, Executor* (1963), 135 Ind. App. 247, at 255, 192 N.E.2d 469, at 473-474, this court stated:

'A close review of the evidence fails to show how the appellants sustained any prejudicial harm and this court will not reverse for error in the admission of evidence unless there is a showing that the appellants were prejudiced thereby. The appellants have wholly failed to point out wherein they were prejudicially harmed by the admission of the evidence complained of, under the theory of the case as submitted to the trial court. [Citations omitted.] Having failed to establish reversible error on the record in this regard, the appellants must wholly fail in this contention.' [Citations omitted.].

"In the case at bar, appellants have similarly failed to show this court in what manner they were harmed through

the admission of the items enumerated in their motion in limine. Furthermore, a review of such items discloses that no prejudice to the appellants was occasioned by their admission in this cause."

The case at bar differs from *Marsh* in that the evidence sought to be excluded by the City were excluded when objected to at trial. We cannot see how the City was harmed from the successful exclusion of the evidence. Therefore, we find no error based on the trial court's ruling on the City's pre-trial motion in limine.

Finally, the City of Indianapolis contends that the trial court erred in admitting into evidence, over timely objections, testimony concerning the condemnor's intended future use of the subject property.

The testimony involved was that of the City's expert witness, Richard Nichols, on cross-examination. The witness was asked questions about the City's use of the property being condemned. The essence of the answers revealed that the property was to be a park to be used in conjunction with a school. The witness was then asked why he had not used the fact that the property was to be used for school purposes in establishing a value for the property. His reply was that he was not aware of the school purpose at the time of his appraisal.

The City maintains that Heeter, by this series of questions, was attempting to inflate the fair market value of the subject property by showing the condemnor's intended future use of the property. Therefore, the City argues that the trial court erred in allowing the witness to answer the propounded questions.

As a general rule, the intended future use that is to be made of condemned property by the condemnor is not to be considered in determining fair market value. This legal principle was succinctly stated by our Supreme Court in *State* v. *Sovich* (1969), 253 Ind. 224, 234, 252 N.E.2d 582, 588:

"Although this Court has never addressed itself to this precise issue, it is clear that the weight of authority holds that neither an increase nor a decrease in the market value of the property sought to be taken, which is brought about by the same project for which the property is being taken, may be considered in determining the value of the property." (Cases omitted.).

However, we are of the opinion that the case at bar is distinguishable from *State* v. *Sovich, supra.* In *Sovich,* testimony concerning the effect which the condemnor's intended future use would have on the condemned property was properly stricken from the record. The present case differs from *Sovich,* in that witness Nichols specifically testified that he did not consider the intended future use of the subject property in making his appraisal.

The trial court did not err in allowing the witness to respond to defendant's question:

Q. All right, when you had this knowledge Mr. Nichols, that this was going to be used for school purposes, then why didn't you testify to the value for those purposes instead of residential?

Without an answer to this question, the court could not properly determine if witness Nichols had in fact considered the condemnor's intended future use in determining the value of the subject property.

No evidence was introduced through Nichols or any other witness indicating that the value of the defendant's property on the date of taking had been increased or decreased by the condemnor's intended future use of the taken parcel. Admittedly, such intended future use was placed before the jury. However, it was the City, during the re-direct examination of its witness, Kenneth Kountz, who originally brought out the fact that the condemned property was to be used as a school park. The City should not now be allowed to complain.

The City further complains that the trial court erred in overruling various objections made by City's counsel to Heeter's questions propounded to witness Nichols regarding the use made of condemned property in other urban renewal projects in Indianapolis.

As in the previous issue, the City argues that Heeter's questions were intended to show the condemnor's intended future use of the subject property in an attempt to inflate the market value.

This issue is determined by the same considerations found in the preceding discussion, and we see no error.

Finding no reversible error, the jury's verdict and the trial court's judgment thereon must be affirmed.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported at 355 N.E.2d 429.