**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 12 2014, 9:52 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**CHRISTINA D. PACE**
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE INVOLUNTARY TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF K.A. and S.A., MINOR CHILDREN, AND THEIR FATHER H.A., | ) ) ) ) ) ) | |
| H.A., | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 28A01-1402-JT-70 |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE GREENE CIRCUIT COURT
The Honorable Erik C. Allen, Judge
Cause Nos. 28C01-1309-JT-9, 28C01-1309-JT-10

**AUGUST 12, 2014**

**BRADFORD, Judge**

## CASE SUMMARY

Appellant-Respondent H.A. ("Father") appeals the juvenile court's order terminating his parental rights to K.A. and S.A. (collectively, the "Children"). On January 4, 2013, the Department of Child Services ("DCS") removed the Children from their parents' care after receiving reports of neglect and observing that, among other things, (1) there were used needles with dried blood on them in the home, (2) the toilet in the home was not working and was full of feces and urine, and (3) there were piles of feces on the Children's bedroom floor. On January 7, 2013, DCS filed a petition alleging that the Children were children in need of services ("CHINS"). The Children were adjudicated to be CHINS on February 11, 2013.

DCS filed a petition seeking the termination of Father's parental rights to the Children on September 5, 2013. Following a two-day evidentiary hearing, the trial court issued an order terminating Father's parental rights to the Children. On appeal, Father contends that DCS did not provide sufficient evidence to support the termination of his parental rights. We affirm.

## FACTS AND PROCEDURAL HISTORY

Father and E.L. ("Mother") are the parents of the Children.[1] K.A. was born on October 19, 2002, and S.A. was born on February 5, 2004. The Children were removed from Father's care on January 4, 2013. Three days later, on January 7, 2013, DCS filed petitions alleging that the Children were CHINS. In these petitions, DCS alleged that Father and

2

Mother failed to provide the Children with a safe and appropriate living environment. Specifically, DCS alleged that the family's home did not have a working toilet; a non-working toilet was observed filled with urine and feces; there were several mounds of dirty clothes and feces on the floor of the Children's bedroom; there were many visible syringes with dried blood in the parents' bedroom and in the kitchen; and a spoon with white residue was visible in the parents' bedroom. The Children have not been returned to Father's care since January 4, 2013.

On February 11, 2013, the juvenile court adjudicated the Children to be CHINS. Also on February 11, 2013, the juvenile court issued a dispositional order and parental participation decree, in which it ordered Father to participate in certain services. Specifically, Father was ordered to (1) participate in all recommended services relating to substance abuse treatment; (2) attend supervised visitation with the Children; (3) complete a domestic violence assessment and participate in recommended services addressing issues of domestic violence; (4) participate in family therapy services in an effort to develop effective communication and parenting skills; (5) participate in random drug screens; (6) remain in contact with the DCS family case manager in order to allow the family case manager to monitor Father's compliance with services; (7) notify DCS of any changes in address, employment, telephone number, and household composition; (8) notify DCS of any arrest or criminal charges within five days of the arrest or of charges being filed; (9) permit the DCS family case manager to make announced or unannounced visits to Father's home; (10) keep all appointments; (11) obtain and maintain suitable housing; (12) secure and maintain a legal

---

[1] The termination of Mother's parental rights to the Children is not at issue in this appeal.

and stable source of income; (13) assist in the formulation and implementation of a plan designed to protect the Children from abuse or neglect; (14) establish paternity of the Children; (15) participate in and successfully complete counseling as referred by the family case manager; (16) participate in and successfully complete a drug and alcohol assessment and successfully complete all recommendations developed as a result of the assessment; (17) complete a parenting assessment and successfully complete all recommendations developed as a result of the assessment; (18) complete a mental health evaluation; and (19) obey the law. Father did not complete the services ordered by the juvenile court.

On September 5, 2013, DCS filed a petition seeking the termination of Father's parental rights to the Children. On January 7 and 8, 2014, the juvenile court conducted an evidentiary termination hearing at which Father appeared and was represented by counsel. During the evidentiary termination hearing, DCS introduced evidence indicating that Father had failed to participate in the services ordered by the juvenile court. DCS also introduced evidence indicating that the termination of Father's parental rights was in the Children's best interests. This included evidence that since being removed from Father's care, the Children have made positive progress with establishing bonds with others, beginning to trust others, and becoming more social. This also included evidence that the Children were doing well in school. In addition, DCS introduced evidence indicating that the Children required stability and a sense of permanency, and that its plan for the permanent care and treatment of the Children was adoption. Father acknowledged that he was incarcerated at the time of the termination hearing and argued that as a result, he should be granted more time to comply

4

with the court-ordered services. Following the conclusion of the termination hearing, the juvenile court issued an order terminating Father's parental rights to the Children. Father now appeals.

**DISCUSSION AND DECISION**

The Fourteenth Amendment to the United States Constitution protects the traditional right of a parent to establish a home and raise his children. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005). Further, we acknowledge that the parent-child relationship is "one of the most valued relationships of our culture." *Id.* However, although parental rights are of a constitutional dimension, the law allows for the termination of those rights when a parent is unable or unwilling to meet his responsibility as a parent. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. Therefore, parental rights are not absolute and must be subordinated to the children's interests in determining the appropriate disposition of a petition to terminate the parent-child relationship. *Id.*

The purpose of terminating parental rights is not to punish the parent but to protect the children. *Id.* Termination of parental rights is proper where the children's emotional and physical development is threatened. *Id.* The juvenile court need not wait until the children are irreversibly harmed such that their physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id.*

Father contends that the evidence presented at the evidentiary hearing was insufficient to support the juvenile court's order terminating his parental rights. In reviewing termination proceedings on appeal, this court will not reweigh the evidence or assess the credibility of the

5

witnesses. *In re Involuntary Termination of Parental Rights of S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004). We only consider the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id.* Where, as here, the juvenile court includes findings of fact and conclusions thereon in its order terminating parental rights, our standard of review is two-tiered. *Id.* First, we must determine whether the evidence supports the findings, and, second, whether the findings support the legal conclusions. *Id.*

In deference to the juvenile court's unique position to assess the evidence, we set aside the juvenile court's findings and judgment terminating a parent-child relationship only if they are clearly erroneous. *Id.* A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id.* A judgment is clearly erroneous only if the legal conclusions made by the juvenile court are not supported by its findings of fact, or the conclusions do not support the judgment. *Id.*

In order to involuntarily terminate a parent's parental rights, DCS must establish by clear and convincing evidence that:

(A) one (1) of the following exists:
   (i) the child has been removed from the parent for at least six (6) months under a dispositional decree;
   (ii) a court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or
   (iii) the child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
(B) that one (1) of the following is true:

6

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
(C)  termination is in the best interests of the child; and
(D)  there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (2012).

Father does not dispute that DCS presented sufficient evidence to support the second, third, and fourth elements set forth in Indiana Code section 31-35-2-4(b).  Father, however, claims that DCS failed to prove that the Children had been removed from his care for at least six months under a dispositional decree.[2]  In making this claim, Father argues that the juvenile court abused its discretion in admitting certain certified copies of documents created in connection to the underlying CHINS actions.

> Our standard of review for the admission of documents is well-settled. The admission or exclusion of documentary evidence rests within the discretion of the trial court. *City of Indianapolis v. Heeter*, 171 Ind. App. 119, 135, 355 N.E.2d 429, 438 (1976).  A proper foundation for the admission of such evidence must necessarily be laid, and if the trial court, within its discretion, is satisfied as to the document's validity, such evidence may be admitted. *Id*.  We will not disturb the rulings of the trial court unless an abuse of discretion is shown. *Id*.  An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Stone v. State*, 536 N.E.2d 534, 538 (Ind. Ct. App. 1989), *trans. denied*.

*Carter v. Knox Cnty. Office of Family & Children*, 761 N.E.2d 431, 437 (Ind. Ct. App. 2001).

Father argues that the trial court abused its discretion in admitting DCS Exhibit 5 into evidence.  DCS Exhibit 5 contains various certified copies of documents which were created

in connection with the underlying CHINS actions, including the CHINS petitions, pre-dispositional reports, the combined order finding the Children to be CHINS, the combined order of participation, the combined dispositional order, various progress reports filed with the juvenile court by service providers, and the combined order approving a change in DCS's permanency plan for the Children.

We note that Father does not challenge the admission of DCS Exhibit 5 on the same grounds on appeal as he did during the evidentiary termination hearing. Father challenged the admission of DCS Exhibit 5 on hearsay grounds during the evidentiary termination hearing. On appeal, he challenges the admission of DCS Exhibit 5 by claiming that the documents were not properly authenticated. Thus, Father's challenge on appeal is waived. *See Musgrave v. Aluminum Co. of Am., Inc.*, 995 N.E.2d 621, 638-39 (Ind. Ct. App. 2013) (providing that it is well established that a party may not object on one ground at trial and seek reversal on appeal using a different ground), *trans. denied*.

Waiver notwithstanding, we conclude that the juvenile court did not abuse its discretion in admitting DCS Exhibit 5 into evidence. In *Carter*, we specifically stated that DCS was entitled to offer the CHINS petition, the pre-dispositional report, the parental participation order, the modification report, or any other document or order containing written findings, which was required to be created during the underlying CHINS proceedings into evidence. *See Carter*, 761 N.E.2d at 438. DCS Exhibit 5 contains precisely the type of documents mentioned in *Carter*. In addition, each of the documents contained in DCS Exhibit 5 have been certified by the clerk of the juvenile court as being "true and complete"

---

[2] Father correctly asserts that the juvenile court did not make a finding under subsection (ii) or (iii).

copies of the original documents filed in the underlying CHINS proceedings. Because DCS Exhibit 5 contains certified copies of the type of documents specifically mentioned in *Carter*, we conclude that the juvenile court did not abuse its discretion in admitting the contents of this exhibit into evidence during the evidentiary termination hearing.

In terminating Father's parental rights to the Children, the juvenile court concluded that the evidence was sufficient to establish the requirement set forth in Indiana Code section 31-35-2-4(b)(2)(A), *i.e.*, that the Children had been removed from Father's care for more than six months under a dispositional decree. Again, the Children were removed from Father's care on January 4, 2013, and have not been returned to his care since that date. On February 4, 2013, the juvenile court entered a dispositional order in which it noted that the Children had previously been determined to be CHINS and ordered that the Children shall remain in their current placements under the supervision of DCS. The evidentiary termination hearing was conducted on January 7 and 8, 2014, approximately eleven months after the juvenile court entered the dispositional order. DCS Exhibit 5 clearly demonstrates that, at the time of the evidentiary termination hearing, the Children had been removed from Father's care for more than six months pursuant to a dispositional decree. As such, we conclude that the evidence is sufficient to prove the requirement of Indiana Code section 31-35-2-4(b)(2)(A). Father's claim to the contrary amounts to an invitation to reweigh the evidence, which we will not do. *See In re S.P.H.*, 806 N.E.2d at 879.

## CONCLUSION

Having concluded that the evidence is sufficient to support the juvenile court's order terminating Father's parental rights to the Children, we affirm the judgment of the juvenile court.

The judgment of the juvenile court is affirmed.

BARNES, J., and BROWN, J., concur.