**BLACKBIRD FARMS APARTMENTS, LP, Petitioner,**

v.

**DEPARTMENT OF LOCAL GOVERN-MENT FINANCE,[1] Respondent.**

No. 49T10–9812–TA–205.

Tax Court of Indiana.

April 2, 2002.

1. The State Board of Tax Commissioners ("State Board") was originally the Respondent in this appeal. However, the legislature abolished the State Board as of December 31, 2001. P.L. 198–2001, § 119(b)(2). Effective January 1, 2002, the legislature created the Department of Local Government Finance ("DLGF"), *see* Indiana Code § 6–1.1–30–1.1 (West Supp.2001)(eff. 1–1–02); P.L. 198–2001, § 66, and the Indiana Board of Tax Review ("Indiana Board"). IND.CODE § 6–1.5–1–3 (West Supp.2001)(eff. 1–1–02); P.L. 198–2001, § 95. Pursuant to Indiana Code § 6–1.5–5–8, the DLGF is substituted for the State Board in appeals from final determinations of the State Board that were issued before January 1, 2002. IND.CODE § 6–1.5–5–8 (West Supp.2001)(eff. 1–1–02); P.L. 198–2001, § 95. Nevertheless, the law in effect prior to January 1, 2002 applies to these appeals. *Id. See also* P.L. 198–2001, § 117. Although the DLGF has been substituted as the Respondent, this Court will still reference the State Board throughout this opinion.

James W. Beatty, James F. Beatty, Stephen M. Terrell, Landman & Beatty, Indianapolis, IN, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, Ted J. Holaday, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

Blackbird Farms Apartments, LP (Blackbird) appeals from three final determinations of the State Board of Tax Commissioners (State Board) valuing its real property for the 1995 assessment. The sole issue before the Court is whether the State Board erred in valuing Blackbird's land at $60,000 per acre.

## FACTS AND PROCEDURAL HISTORY

Blackbird's real property, consisting of approximately thirteen acres of land and a 154–unit apartment complex, is located in Wabash Township, Tippecanoe County, Indiana. The property is situated at the intersection of Lindberg Road and McCormick Road in West Lafayette.

In accordance with Indiana Code § 6–1.1–4–13.6 (West 1989) (amended 1993), the State Board promulgated a land order for use by Tippecanoe County assessing officials for the 1995 general reassessment. Under that land order, the base rate values of Blackbird's land could vary between $5,000 and $240,000 per acre. (See Stip. Ex. I). Blackbird's land was valued at $60,000 per acre.

Believing this value to be too high, Blackbird filed three Form 130 Petitions for Review of Assessment with the Tippecanoe County Board of Review (BOR).[2] The BOR reevaluated the assessment but

---

2. Blackbird's real property is comprised of three separate real estate parcels. For purposes of the administrative proceedings, as well as proceedings before this Court, the three separate appeals were consolidated.

declined to change the value assigned to Blackbird's land.

Consequently, Blackbird filed three Form 131 Petitions for Review of Assessment with the State Board. The State Board held a hearing on the petitions on June 28, 1998. In its final determinations of November 30, 1998, however, the State Board made no change to Blackbird's assessment.

Blackbird filed an original tax appeal with this Court on December 18, 1998. The Court conducted a trial on December 20, 1999. Oral argument was heard on September 11, 2000. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ This Court accords great deference to the State Board when it acted within the scope of its authority. *Wetzel Enters., Inc. v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1259, 1261 (Ind. Tax Ct.1998). Accordingly, the Court will reverse a State Board final determination only if it is unsupported by substantial evidence, constitutes an abuse of discretion, exceeds statutory authority, or is arbitrary and capricious. *Id.*

■■ The party challenging the propriety of a State Board final determination bears the burden of demonstrating its invalidity. *Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1233 (Ind. Tax Ct.1998). To do so, the taxpayer must present a prima facie case, or one in which the evidence is " 'sufficient to establish a given fact and which if not contradicted will remain sufficient.' " *Id.* (quoting *GTE N., Inc. v. State Bd. of Tax Comm'rs*, 634 N.E.2d 882, 887 (Ind. Tax Ct. 1994)). Although the burden of proof never shifts, once the taxpayer presents a prima facie

case, the duty to go forward with the evidence shifts, and it is incumbent on the State Board to rebut the taxpayer's evidence and support its decision with substantial evidence. *Id.*

## DISCUSSION AND ANALYSIS

Blackbird challenges the $60,000 per acre value assigned to its land. It asserts that, despite "present[ing] a prima facie case that the assessment of its apartment land [should have been between $30,000 and $36,000 an acre] ... the State Board did not come forward with substantial evidence ... to overcome Blackbird Farms' evidence." (Pet'r Br. at 2, 5). In response, the State Board contends that "Blackbird did not prove a prima facie case[ ]" that the land was erroneously valued at $60,000 per acre. (Resp't Br. at 8,10). As a result, the State Board contends that its "duty to support its final determination ... with substantial evidence is not triggered." (Resp't Br. at 10).

■ Under Indiana's true tax value system, the assessed value of nonagricultural land is based, theoretically, on its market value. *Town of St. John et. al v. State Bd. of Tax Comm'rs*, 665 N.E.2d 965, 967 (Ind. Tax Ct.1996) (*St. John I*) *rev'd on other grounds by Boehm v. Town of St. John*, 675 N.E.2d 318 (Ind.1996). Consequently, each county has its own land valuation commission to collect and analyze sales data for the county and, on the basis of that information, determine the values of all commercial, residential, and industrial land therein. IND.CODE § 6–1.1–4–13.6(e). The State Board reviews and approves the values submitted by the county commissions, modifying the values if necessary in order "to provide [for] uniformity and equality" in assessments. IND.CODE § 6–1.1–4–13.6(f).[3]

**3.** As this Court explained years ago, the State Board's duty to ensure uniformity and equali-

Once the values are approved by the State Board, they are compiled in a "land order" for use by the county's assessing officials. *See* IND.CODE § 6–1.1–4–13.6. The land values are typically expressed in ranges of "base rates" that are applied to various geographic areas, subdivisions, or neighborhoods based on distinguishing characteristics or boundaries. IND. ADMIN. CODE tit. 50, r. 2.2–4–4(c).

■ To challenge the base rate applied to its land under the land order, Blackbird must present probative evidence that comparable properties are assessed and taxed differently. *See Zakutansky v. State Bd. of Tax Comm'rs*, 691 N.E.2d 1365, 1369–70 (Ind. Tax Ct.1998); *Vonnegut v. State Bd. of Tax Comm'rs*, 672 N.E.2d 87, 89–90 (Ind. Tax Ct.1996); *Poracky v. State Bd. of Tax Comm'rs*, 635 N.E.2d 235, 237 (Ind. Tax Ct.1994). To meet this burden, Blackbird introduced into evidence a list of apartment complexes in Tippecanoe County where the land is assessed at either $30,000 or $36,000 an acre. Blackbird also introduced a list of land sales in Tippecanoe County to demonstrate that its assessment was too high in relation to the land's market value. In reviewing this evidence, however, the Court determines that Blackbird did not meet its burden of proof.

## I. Comparable Land Assessments

During the administrative proceedings, Blackbird introduced evidence indicating that, for the 1995 assessment, the land at seven "comparable" apartment complexes in Tippecanoe County had been assessed significantly lower than Blackbird's land. Indeed, the land at those properties had been assessed at either $30,000 an acre or $36,000 an acre. (Stip.Ex.H). Blackbird maintains that "[t]his [evidence in and] of

itself is sufficient to establish a prima facie case." (Pet'r Br. at 7). The Court disagrees.

■ Years ago, Indiana's Supreme Court emphasized that "[w]hether or not properties are similar enough to be considered 'comparable' . . . depend[s] on a number of factors including (but not limited to) size, shape, topography, accessibility, use, and[, in the case of establishing a comparable sale,] closeness of the time of the sale to the present action." *Beyer v. State*, 258 Ind. 227, 280 N.E.2d 604, 607 (1972). The State Board's regulations have a similar emphasis:

> The [county land valuation] commission shall use plat maps or recorded plats to establish land value maps for the county. The land value maps show outlines of blocks, streets, and alleys, and include all lots and their dimensions.

> The commission shall collect sales data and land value estimates from licensed real estate brokers and record this information on the maps. . . .

> From the information, the commission shall delineate general geographic areas, subdivisions, or neighborhoods based on characteristics that distinguish a particular geographic area, subdivision, or neighborhood from the surrounding areas. The basis for delineation are [sic] such things as the following:

> (1) Range of improvement values.

> (2) Zoning.

> (3) Restrictions on land use.

> (4) Natural geographic features, such as waterways, lakes, major roads, or streets.

IND. ADMIN. CODE tit. 50, r. 2.2–4–4(a), (b), (c). Consequently, properties within each

---

ty in tax rates and assessments is "not an abstract goal" but rather a "concrete obligation" under both the state constitution and

the directives of the general assembly. *Bielski v. Zorn*, 627 N.E.2d 880, 885 (Ind. Tax Ct.1994).

geographic area, subdivision, or neighborhood in a land order are presumed to be comparable, both in distinguishing characteristics and market value. *See State Bd. of Tax Comm'rs v. Indianapolis Racquet Club*, 743 N.E.2d 247, 251–52 (Ind.2001).

In the present case, Blackbird submitted assessment information on properties it believed to be comparable. However, none of these "comparable" properties were in the same township, and therefore not subject to the same portion of the land order.[4] Moreover, the record does not show that Blackbird explained how the land at each of the apartment properties was comparable. Indeed, there is no comparison of lot sizes or shapes, no comparison of topography or geographical features, no comparison of lot accessibility and uses. Rather, Blackbird merely asserted that the land "is comparable." A taxpayer's conclusory statement that something is comparable does not constitute probative evidence. *Whitley Prods., Inc. v. State Bd. of Tax Comm'rs*, 704 N.E.2d 1113, 1119 (Ind. Tax Ct.1998), *review denied*. Because Blackbird did not present evidence that the land at the apartment complexes was comparable to its own, it did not present a prima facie case. This being so, the State Board's duty to support its decision with substantial evidence was not triggered.[5] *Clark*, 694 N.E.2d at 1233.

## II. Land Sales

Blackbird also submitted evidence at the administrative proceedings of comparable land sales in Tippecanoe County. Specifically, it submitted a list indicating that, from a period of 1990 to 1994, six land sales were made, with purchase prices ranging from $11,000 an acre to $46,000 an acre, and averaging $22,000 an acre. (Stip.Ex.G). Blackbird maintains that because the "assessed value [of a piece of land] is the raw price of land plus the cost of development, and using the comparable assessments presented, these figures clearly support a calculation of developmental costs at $8,000 per acre with an average assessed value of $30,000 per acre." (Pet'r Br. at 7). Again, the Court must disagree.

First, no evidence was submitted by Blackbird to substantiate that these land sales were indeed comparable. As before, all the land sales were made in other townships in Tippecanoe County.[6] Furthermore, Blackbird made no attempt to explain how the land in its proposed comparables was similar to its own.[7] Finally, no evidence was submitted to substantiate the claim that developmental

---

4. The apartment properties Blackbird used as comparables were all located in Fairfield Township, Tippecanoe County. The only portion of the land order that was submitted into evidence, however, was the portion titled "Wabash Township, Tippecanoe County." Included in an effort to compare similarities between the subject property and the properties used as comparables would be the portion of the land order relating to Fairfield Township.

5. Nevertheless, the State Board did submit evidence (via the county assessor) to support its final determination consisting of: six apartment complexes in the same township (Wabash) (and consequently subject to the same part of the land order) with land assess-

ments at $60,000 per acre. (*See* Stip. Exs. J2, J3, J4, and J5).

6. Blackbird claims there were no comparable land sales made in Wabash Township at the same time it purchased its land, and it therefore had to rely on sales outside the township. That being said, it was still incumbent on Blackbird to show how those land sales outside Wabash Township were comparable to its own.

7. There was some supporting documentation submitted with Blackbird's list indicating that only three of the "comparable" properties had similar zoning designations, and only two had documentation stating that the transaction was made "at arm's length." Despite the

costs were $8,000. Consequently, Blackbird failed to make a prima facie case, and therefore the State Board's duty to support its decision with substantial evidence was not triggered. *Clark,* 694 N.E.2d at 1233.

## CONCLUSION

Blackbird has not made a prima facie case with respect to the issue of land valuation. Thus, for the foregoing reasons, the State Board's final determination is AFFIRMED.

ability to read of all those involved, mere reference to evidence or documentation without explanation will not qualify as probative evidence. *See Heart City Chrysler v. State Bd. of Tax Comm'rs,* 714 N.E.2d 329, 333 (Ind. Tax Ct.1999) (indicating that mere references to photographs or State Board regulations, without explanation, will not qualify as probative evidence).