INDIAN INDUSTRIES,
INC., Petitioner,

v.

DEPARTMENT OF LOCAL GOVERN-
MENT FINANCE,[1] Respondent.

No. 49T10–9811–TA–165.

Tax Court of Indiana.

May 19, 2003.

Publication Ordered June 30, 2003.

**1.** The State Board of Tax Commissioners ("State Board") was originally the Respondent in this appeal. However, the legislature abolished the State Board as of December 31, 2001. 2001 Ind. Acts 198 § 119(b)(2). Effective January 1, 2002, the legislature created the Department of Local Government Finance ("DLGF"), *see* Indiana Code § 6–1.1–30–1.1 (West Supp.2001)(eff. 1–1–02); 2001 Ind. Acts 198 § 66, and the Indiana Board of Tax Review ("Indiana Board"). IND. CODE § 6–1.5–1–3 (West Supp.2001)(eff. 1–1–02); 2001 Ind. Acts 198 § 95. Pursuant to Indiana Code § 6–1.5–5–8, the DLGF is substituted for the State Board in appeals from final determinations of the State Board that were issued before January 1, 2002. IND. CODE § 6–1.5–5–8 (West Supp.2001)(eff. 1–1–02); 2001 Ind. Acts 198 § 95. Nevertheless, the law in effect prior to January 1, 2002 applies to these appeals. *Id. See also* 2001 Ind. Acts 198 § 117. Although the DLGF has been substituted as the Respondent, this Court will still reference the State Board throughout this opinion.

---

David L. Pippen, Indianapolis, Attorney for Petitioner.

Steve Carter, Attorney General of Indiana, Kathryn Symmes Kirk, Deputy Attorney General, Indianapolis, Attorney for Respondent.

FISHER, J.

Indian Industries, Inc. (Indian) appeals the final determination of the State Board of Tax Commissioners (State Board) valuing its real property for the March 1, 1992 assessment date.

## ISSUES

I.   Whether the State Board erred in applying a 35% obsolescence depreciation adjustment to Indian's improvement;

II.  Whether the State Board erred in grading Indian's improvement; and

III. Whether the State Board erred in valuing Indian's land? [2]

## FACTS AND PROCEDURAL HISTORY

Indian owns land and an improvement in Evansville, Indiana. For the 1992 assessment date, the Vanderburgh County Board of Review (BOR) assigned Indian's property an assessed value of $794,230 (land at $70,630 and the improvement at $723,600). In arriving at that value, the BOR: 1) applied a 35% obsolescence adjustment to Indian's improvement; and 2) assigned sections 1, 2, and 3 of Indian's improvement a grade of C–2, and section 4 a grade of C+1. (*See* Ex. L at 2–3.) The BOR

---

2. Indian also argues that its assessment should be voided because portions of Indiana's regulations for taxing tangible property have been declared unconstitutional. Indeed, in 1998, the Indiana Supreme Court affirmed this Court's determination that "the existing cost schedules ... violate the Property Taxation Clause of the Indiana Constitution." *State Bd. of Tax Comm'rs v. Town of St. John*, 702 N.E.2d 1034, 1043 (Ind.1998). That same year, however, this Court declared that "[r]eal property must still be assessed, and, until the new regulations are in place, must be assessed under the present system." *Whitley Prods., Inc. v. State Bd. of Tax Comm'rs*, 704 N.E.2d 1113, 1121 (Ind. Tax Ct.1998), *review denied; see also Town of St. John v. State Bd. of Tax Comm'rs*, 729 N.E.2d 242, 246 & 251 (Ind. Tax Ct.2000) (ordering real property in Indiana to be reassessed under constitutional regulations as of March 1, 2002 and providing that until then, "real property tax assessments shall be made in accordance with the current system"). The Court, therefore, will not analyze Indian's state constitutional claim in this opinion.

Indian also contends that because Indiana's system of taxing tangible property is not "based upon objectively verifiable data," (*see* Pet'r Br., Findings of Fact and Conclusions of Law at 8–9), its due process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution are violated. This Court has in the past rejected legal arguments analogous to Indian's. *See Town of St. John v. State Bd. of Tax Comm'rs*, 690 N.E.2d 370, 388–97 (Ind. Tax Ct.1997), *rev'd in part on other grounds by* 702 N.E.2d 1034 (Ind.1998). Even if Indian's federal constitutional claims had merit, real property must still be assessed, and, until the new regulations are in place, must be assessed under the present system. *See Whitley Prods.*, 704 N.E.2d at 1121. The Court, therefore, will not analyze Indian's federal constitutional claim in this opinion either.

also valued Indian's land at $17,424 per acre. (*See* Ex. L at 1.)

Believing the assessment to be too high, Indian filed a Petition for Review of Assessment (Form 131) with the State Board on December 22, 1993. In its Form 131, Indian raised one issue: that "[a]n additional amount of obsolescence depreciation should be applied based on type of construction, plant layout and functional utility." (Ex. J.)

Following an administrative hearing, the State Board issued a final determination on Indian's Form 131, affirming the BOR's decision. Dissatisfied with the result, Indian filed an appeal with this Court on January 3, 1997. On June 19, 1998, the Court remanded the action to the State Board for further proceedings.[3] (Ex. A at 3.)

On September 3, 1998, the State Board conducted a remand hearing. At the hearing, Indian offered testimony describing certain errors in its property assessment that were in addition to the obsolescence issue · originally alleged in its Form 131. These additional errors included improper land value, overstated grade, improper computation of a framing adjustment and sprinkler pricing, and erroneous assessment of a dock floor. On September 22, 1998, the State Board issued its final determination, lowering the assessed value of Indian Industries' improvement to $686,430. The lowered valuation resulted from the State Board's reductions to the improvement's framing and sprinkler pricing.

Indian Industries again appealed the State Board's final determination to this Court on November 5, 1998. Trial was held on October 14, 1999. Oral arguments were heard on December 4, 2000. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

This Court gives great deference to the final determinations of the State Board when it acts within the scope of its authority. *Thousand Trails, Inc. v. State Bd. of Tax Comm'rs,* 757 N.E.2d 1072, 1075 (Ind. Tax Ct.2001). Thus, this Court will reverse a final determination of the State Board only when its findings are unsupported by substantial evidence, arbitrary, capricious, constitute an abuse of discretion, or exceed statutory authority. *Id.*

Furthermore, a taxpayer who appeals to this Court from a State Board final determination bears the burden of showing that the final determination was invalid. *Id.* The taxpayer must present a prima facie case by submitting probative evidence (i.e., evidence sufficient to establish a given fact that, if not contradicted, will remain sufficient). *Id.* Once the taxpayer presents a prima facie case, the burden shifts to the State Board to rebut the taxpayer's evidence and support its findings with substantial evidence. *Id.*

## DISCUSSION

### I. Obsolescence Depreciation

██ Indian contends that the State Board's final determination affirming the BOR's application of a 35% obsolescence depreciation adjustment is "baseless or otherwise in error." (Pet'r Post–Hr'g Br., Findings of Fact and Conclusions of Law

---

**3.** On April 24, 1998, this Court issued an opinion in *Clark v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1230 (Ind. Tax Ct.1998). In essence, *Clark* set forth what this Court expects from taxpayers and the State Board in appeals involving issues of obsolescence. *See*

*Clark,* 694 N.E.2d at 1241. As a result of that directive, many cases involving obsolescence that were pending before the Court were remanded to the State Board for further consideration in light of *Clark.*

at 3.) More specifically, Indian argues that it submitted probative evidence indicating that it was entitled to a 70% obsolescence adjustment. Indian is incorrect.

"Obsolescence, which is a form of depreciation, is defined as a loss of value and classified as either functional or economic." *Freudenberg–NOK Gen. P'ship v. State Bd. of Tax Comm'rs*, 715 N.E.2d 1026, 1029 (Ind. Tax Ct.1999), *review denied. See also* IND. ADMIN CODE tit. 50, r. 2.1–5–1 (1992). Functional obsolescence is caused by factors internal to the property and is evidenced by conditions within the property itself. *See* 50 IAC 2.1–5–1. Economic obsolescence is caused by factors external to the property. *Id.* The State Board's regulations cite several examples of causes of obsolescence, such as limited use or excessive material and product handling costs due to an irregular or inefficient floor plan (functional) and the location of the building is inappropriate for the neighborhood (economic). *Id.*

This Court has previously explained that when a taxpayer seeks an obsolescence adjustment, it must make a two-pronged showing. *See Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1238 (Ind. Tax Ct.1998). First, the taxpayer must identify specific factors that are causing, or have caused, its improvement to suffer a loss of value. *See id.* Only after this showing does the taxpayer proceed to the second prong: quantifying the amount of obsolescence to be applied.[4] *See id.*

It is important to recognize, however, that each of these prongs requires a connection to an actual loss in property value.

For example, when identifying factors that cause obsolescence, a taxpayer must show through the use of probative evidence that these factors are causing an *actual* loss of value to its property.[5] *See Miller Structures v. State Bd. of Tax Comm'rs*, 748 N.E.2d 943, 954 (Ind. Tax Ct.2001). Furthermore, when a taxpayer quantifies the amount of obsolescence to which it believes it is entitled, it is required, through the use of professional appraisal techniques, to convert that *actual* loss of value (shown in the first prong) into a percentage reduction and apply it against the improvement's overall value. *See Clark*, 694 N.E.2d at 1238.

During the administrative hearing, Indian presented an "Assessment Review and Analysis" in which it argued that its property suffered from both functional and economic obsolescence because the building lacked thermal pane windows and insulation, its layout was inefficient, it did not facilitate a network of computer and phone lines, it lacked adequate parking, and it was in an older declining neighborhood with narrow streets and "a mix of inharmonious uses." (Ex. B at 5–6.) As a result, Indian claims the property "is at an economic disadvantage in the market place, incurring higher utility, maintenance, material handling, and labor costs." (Ex. B at 6.) Indian's "Assessment Review and Analysis" also contains: 1) a cursory mathematical calculation showing how it arrived at 70% (*see* Exs. B at 30, and D); 2) a "statement of consolidated income" for Escalade, Inc. and its subsidiaries for fiscal years 1990 and 1991 (*see* Ex. E);[6] and

---

4. Indeed, "[w]here there is no cause of obsolescence, there is no obsolescence to quantify." *Lake County Trust v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1253, 1257 (Ind. Tax Ct.1998), *review denied.*

5. In the commercial context, this loss of value usually means a decrease in the property's

income generating ability. *See Miller Structures v. State Bd. of Tax Comm'rs*, 748 N.E.2d 943, 953 (Ind. Tax Ct.2001).

6. The Court has not been apprised as to how Indian Industries is related to Escalade, Inc.

3) an analysis of "cost of sales" for 1989–1992. (*See* Ex. F.)

All Indian has done in this case is provide the State Board with a laundry list of factors that *may* cause obsolescence to its improvement and then say "as a result, we're entitled to a 70% obsolescence adjustment." However, Indian needed to link one with the other by showing an *actual* loss of value. *See Miller Structures*, 748 N.E.2d at 954. Instead, the administrative record, as well as the case Indian presented at trial, is completely devoid of any evidence indicating and explaining Indian's actual loss of value. Because Indian has not shown how or why its improvement's value is negatively impacted by the factors that generally cause obsolescence, it has not satisfied its burden. Thus, the State Board's final determination on this issue is AFFIRMED.[7]

## II. Grade

Indian also alleges that the State Board erred in grading various sections of its improvement. Specifically, Indian alleges that while the State Board assigned sections 1, 2, and 3 a grade of C–2, and section 4 a grade of C + 1, it (Indian) submitted probative evidence to support re-spective grades of D, D–1, D, and C. Indian is incorrect.

The grading of improvements is an important part of Indiana's property assessment system. Under that system, assessors use improvement models and cost schedules to determine the base reproduction cost of a particular improvement. *See Whitley Prods.*, 704 N.E.2d at 1116. Improvements are then assigned various grades based on their materials, design, and workmanship. *Id. See also* IND. ADMIN. CODE tit. 50, r. 2.1–4–3(f) (1992) (providing that grade is "used to adjust the total base reproduction cost determined [by using the improvement models and cost schedules] to account for variations in the quality of materials, workmanship, and design[ ]"). The grades represent multipliers that are applied to the subject improvement's base reproduction cost. *Whitley Prods.*, 704 N.E.2d at 1116.

There are times, however, when an improvement deviates from the applicable improvement model or cost schedule. Such a deviation impacts the improvement's base reproduction cost. *Id.* at 1117. As this Court has previously ex-

---

7. Indian also asserts that "[b]ecause the State Board applied obsolescence ... whether Indian presented evidence demonstrating a need for additional obsolescence has nothing to do with whether the 35% figure itself is supported by substantial evidence." (Pet'r Post–Hr'g Br., Findings of Fact and Conclusions of Law at 4 (internal brackets omitted).) Indian misses the point.

When this Court remanded the case to the State Board, it afforded both Indian and the State Board an opportunity to work together to quantify the appropriate amount of obsolescence. What Indian fails to recognize is that the quantification of obsolescence is intrinsically tied to the actual loss of value suffered by the improvement from the alleged causes. *See Miller Structures*, 748 N.E.2d at 954. *See also Heart City Chrysler v. State Bd. of Tax Comm'rs*, 714 N.E.2d 329, 334 (Ind.

Tax Ct.1999) (stating that attempts to quantify obsolescence must correlate to the causes of obsolescence). Because Indian has not shown actual loss in the first place, it is impossible to convert that loss of value into an obsolescence quantification.

Furthermore, even if there are any issues with the State Board's calculation, they do not mandate reversal at this time. Indeed, if the Court were to reverse and remand the State Board's final determination, Indian would lose its 35% obsolescence adjustment altogether and would start back at square one (having to prove both causes and quantification pursuant to *Clark*). (*See* Oral Argument Tr. at 8.) This is an extremely risky proposition considering, up to this point, Indian has not been able to show that it has even suffered a loss of value.

plained, there are two methods by which to account for such deviations:

> The preferred method ... is to use separate schedules that show the costs of certain components and features present in the model. This allows an assessor to adjust the base reproduction cost of the improvement objectively.

> The other means of accounting for an improvement's deviation from the model used to develop the cost schedule is via an adjustment to the grade of the improvement. This type of adjustment requires the assessor's subjective judgment. Where possible, this type of an adjustment should be avoided. However, because the component (base rate adjustment) schedules are not comprehensive, this type of adjustment may be necessary.

*Id.* (internal citations, quotations, and footnotes omitted.)

Indian alleges that all four sections of its improvement lack certain features presumed in the applicable model, and therefore their respective grades should be adjusted downward. As evidence, Indian's "Assessment Review and Analysis" contains the following statement:

> [Sections 1 and 3 are] substantially inferior to the base model from which [they are] being priced. The subject[s] lacks insulation, thermal pane windows and partitioning that make up the light manufacturing base model. In addition, [they have] an inferior wood block floor, and inferior unit heaters as well as substandard workmanship. The [sections] also lack[ ] any architectural attractiveness. To adjust for this inferior quality a grade no higher than a D ... should be applied.

> [Section 4] is close to matching the model from which it is priced, though falling short in some areas. The grade of C+1 applied by the county is in error. A

grade no higher than a C .... should be applied.

> [Section 2] is also substantially inferior to the base model. The subject is inferior in that it is constructed with only 8 feet high concrete block walls with the remaining 24 feet being a metal skin, and the subject lacks the partitioning that is presumed present. In addition the subject lacks any architectural attractiveness.... To adjust for these differences a grade no higher tha[n] a D–1 ... should be applied.

(Ex. B at 4–5.)

▮▮▮ Indian bears the burden of proof on this issue and must offer *probative* evidence concerning the alleged grading error. *Miller Structures,* 748 N.E.2d at 947; *Clark,* 694 N.E.2d at 1233. Indian's evidence is nothing more than conclusions that "the grade is this" and "it should be that." "A taxpayer's conclusory statements do not constitute probative evidence concerning the grading of the subject improvement." *Sterling Mgmt.-Orchard Ridge Apartments v. State Bd. of Tax Comm'rs,* 730 N.E.2d 828, 838 (Ind. Tax Ct.2000).

Instead, Indian should have explained *how* it calculated its suggested grades of D, C, and D–1. Indeed, Indian should have compared the features in the applicable improvement model(s) with the features (or lack thereof) in its own improvement. Indian should have then attempted to calculate the value of the features in the model and translate that lack of value into a grade adjustment. A taxpayer cannot simply point to alleged deficiencies in a building and expect to make a prima facie case as to grade or any other issue. *See Miller Structures,* 748 N.E.2d at 953. Indian made no comparisons, made no calculations, and, consequently, made no case. The State Board's final determination on this issue is therefore AFFIRMED.

### III.  Land Value

■ Indian's final issue is that its land was improperly valued by the State Board. Specifically, Indian contends that it "presented comparable properties within Vanderburg[h] County to demonstrate [that its land] was not properly placed within the RANGE of [values as prescribed in the Vanderburgh County Land Order]." (Pet'r Post–Hr'g Br., Findings of Fact and Conclusions of Law at 6.) Indian is incorrect.

Under Indiana's true tax value system, commercial, residential, and industrial land values are compiled into a "land order." *See* IND. CODE § 6–1.1–4–13.6 (West 1989). The land values are typically expressed in ranges of "base rates" that assessing officials apply to various geographic areas, subdivisions, or neighborhoods based on their distinguishing characteristics or boundaries. IND. ADMIN. CODE tit. 50, r. 2.1–2–1 (1992).

■ To challenge the base rate applied to its land, a taxpayer must present probative evidence showing that either (1) comparable properties were assessed and taxed differently than its own under the land order or (2) its land was improperly assessed under the wrong section of the land order. *See Park Steckley I v. Dep't of Local Gov't Fin.*, 779 N.E.2d 1270, 1273 (Ind. Tax Ct.2002); *Blackbird Farms v. Dep't of Local Gov. Fin.*, 765 N.E.2d 711, 714 (Ind. Tax Ct.2002). Accordingly, when a taxpayer challenges its assessment under a land order, it is essential for the Court to have an opportunity to read and analyze the relevant portion of the applicable land order.  In particular, the Court must be able to evaluate the application of the land order to the taxpayer's property or comparable properties—or both—so that it may determine if a remedy is warranted and, if so, its nature and extent.  *See Blackbird Farms*, 765 N.E.2d at 715 n. 4. *See also Eastgate P'ship v. Dep't of Local Gov't Fin.*, 780 N.E.2d 435, 438–39 (Ind. Tax Ct.2002) (evaluating different portions of a disputed land order); *Park Steckley*, 779 N.E.2d at 1273 (same).

Indian, having the burden of proof in this case, has not provided the Court with a copy of the land order that is the subject of its appeal.  (*See* Oral Argument Tr. at 23.)  This Court does not have its own copies of land orders, nor is it able to infer what may or may not be in the land order.  *See Davidson Indus. v. State Bd. of Tax Comm'rs*, 744 N.E.2d 1067, 1071 (Ind. Tax Ct.2001) (stating that the Court will not make a party's case for it).  Consequently, without the opportunity to read and evaluate the land order, this Court is unable to reach the merits of Indian's claim.  Thus, the State Board's final determination with respect to this issue is also AFFIRMED.[8]

### CONCLUSION

For the aforementioned reasons, the State Board's final determination is AFFIRMED in all parts.

---

8.  Indian submitted evidence of properties in a neighboring township in Vanderburgh County (*see* Oral Argument Tr. at 14) that it claims are (1) comparable to its own and (2) that sold for less than what its property was assessed for under the land order.  Assuming *arguendo* that the properties are comparable to Indian's, this Court cannot determine whether the same portion of the land order that applies to Indian's land also applies to these properties without reading the land order.  *See Blackbird Farms Apartments, .LP v.* *Dep't of Local Gov't Fin.*, 765 N.E.2d 711, 715 n. 4 (Ind. Tax Ct.2002).  Indeed, properties that are literally across the street from each other can receive different assessments under a land order.  *See, e.g., Park Steckley I v. Dep't of Local Gov't Fin.*, 779 N.E.2d 1270, 1274 (Ind. Tax Ct.2002).  Thus, the fact that the alleged comparables are in the same county does not give rise to a reasonable inference that they were assessed under the same portion of a land order.

### ORDER TO PUBLISH MEMORANDUM DECISION

Respondent, Indiana Board of Tax Review, by counsel, filed its Motion to Publish Memorandum Decision.

The Court, having considered same and being duly advised in the premises, now finds said motion should be GRANTED and that this Court's opinion in this appeal should be published.

IT IS THEREFORE ORDERED as follows:

1. Respondent's "Motion to Publish Memorandum Decision" is hereby granted and the decision in this case handed down on May 19, 2003, marked "Not For Publication" is now ordered to be published.